[No. A035675. First Dist., Div. Two. June 27, 1988.]

VIVEK HEJMADI, Plaintiff and Appellant, v.
AMFAC, INC., et al., Defendants and Respondents.

526

528

530

COUNSEL

Nikolai Tehin, Colin H. Jewell and Bostwick & Tehin for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, Loyd W. McCormick, Gregory P. Landis and John J. McGuirk for Defendants and Respondents.

OPINION

**BENSON, J.**—Plaintiff Vivek Hejmadi appeals from a judgment dismissing his second amended complaint following the sustaining, without leave to amend, of defendants' demurrer to the sixth, seventh, eighth and ninth causes of action. Because we have determined that the second amended complaint successfully pleads a cause of action for a contractual remedy for breach of an implied in fact agreement not to discharge except for good cause and a cause of action for a tort remedy based upon a public policy violation, we reverse the judgment. We also conclude that the complaint as amended does not plead a tort remedy for wrongful termination based upon breach of the implied covenant of good faith and fair dealing. Additionally, we uphold a summary adjudication order which has the effect of barring plaintiff's ninth cause of action for defamation.[1]

*Background*

The procedural history of this case is somewhat peculiar and perplexing. A brief overview is desirable. The underlying incident which plaintiff credits as the source of his employment problems occurred on October 19, 1980. It is alleged that on that day, plaintiff and his girlfriend, Sandra, were at a Liberty House department store. Defendant Liberty House was a division of the AMFAC corporation and defendant AMFAC was the plaintiff's employer at the time of the incident. When in the process of leaving the store premises, plaintiff and Sandra were forcibly detained. Sandra was accused of theft and compelled to enter a room where she was subjected to a strip search by a Liberty House security person, one Betty Flessas. Plaintiff's employment was terminated by AMFAC on March 2, 1981.

We begin with the first amended complaint and confine our discussion to the sixth through ninth causes of action. There plaintiff sought to plead causes of action for wrongful termination of an employment contract and breach of contract labeling his theories of recovery as "Wrongful Discharge from Employment" (sixth cause of action), "Breach of Implied Covenant of

---

[1] Plaintiff voluntarily dismissed with prejudice his first, third, fourth, fifth and tenth causes of action. He was not a complainant in the second cause of action.

Good Faith and Fair Dealing" (seventh cause of action) and "Breach of Oral Contract of Employment" (eighth cause of action). The ninth cause of action was for "Defamation."

Defendants answered and eventually moved for summary adjudication of issues pursuant to Code of Civil Procedure section 437c, subdivision (f). Plaintiff opposed the motion. Thereafter, the court ruled the following issues to be without substantial controversy:

(1) As a matter of law, plaintiff's employment was terminable at will by AMFAC with or without cause; (2) no public policy was violated by plaintiff's termination; (3) the sixth, seventh and eighth causes of action of the complaint fail to state a cause of action for wrongful discharge in violation of public policy; (4) AMFAC breached no duty owed to plaintiff by way of any covenants of good faith and fair dealing respecting plaintiff's employment with AMFAC; (5) plaintiff's sixth, seventh and eighth causes of action fail to state a claim for breach of implied covenant of good faith and fair dealing; (6) AMFAC breached no terms or conditions of the alleged oral employment agreement with plaintiff; (7) plaintiff's eighth cause of action failed to state a cause of action for breach of an oral employment contract; (8) plaintiff's admission that the allegedly defamatory statement was true defeated plaintiff's ninth cause of action for defamation; (9) plaintiff's ninth cause of action failed to state a cause of action for defamation; and (10) the seventh and eighth causes of action failed to state a valid claim for punitive damages.

Finding triable issues of fact, the court at the same time *denied* AMFAC's motion for summary adjudication of the following proffered issues: (11) that plaintiff was not terminated as a consequence of his actions following the October 19, 1980 incident; (12) that as a matter of law any implied covenant of good faith and fair dealing available to plaintiff respecting his employment with AMFAC embraced no duty on the part of AMFAC not to terminate without good cause; (13) that the allegedly defamatory statement attributed to AMFAC was made without malice; (14) that the allegedly defamatory statement was privileged; and (15) that plaintiff's sixth, seventh, eighth and ninth causes should be dismissed.

The same order which adjudicated issues granted plaintiff leave to amend his sixth, seventh and eighth causes of action.

Plaintiff thereafter filed a motion for reconsideration and/or clarification of the summary adjudication order contending, *inter alia,* that the court's summary adjudications were inherently inconsistent and contradictory, and that portions of the order rendered futile the granting of leave to amend the complaint. The motion was denied without comment by minute order.

The plaintiff thereupon filed a second amended complaint which expanded considerably upon the allegations of the sixth, seventh and eighth causes of action of the first amended complaint. As the conclusions we reach depend in great measure upon analysis of the second amended complaint we will briefly summarize that pleading.

In the sixth cause of action (labeled "Wrongful Discharge from Employment") plaintiff alleges that during the last quarter of 1972 he had discussions with AMFAC personnel regarding an employment relationship. Plaintiff was told that AMFAC was a "career-oriented company," that if he accepted employment with AMFAC it would be "continuous, subject to discharge only for cause" and that AMFAC would be "committed to plaintiff's continued employment with the company." In November 1972, plaintiff was offered a position as senior auditor. In reliance on AMFAC's expressed and implied guarantees of continuous employment, plaintiff entered into an oral employment agreement as senior auditor in December 1972.

Plaintiff asserts an understanding between himself and AMFAC that rules and regulations governing discharge of employees, contained in AMFAC's policy and procedures manuals, would apply to his employment. The pleading defines those policies and rules as: "disciplinary action against an employee would be based on just cause; that no employee would be disciplined until the case had been fully investigated; that no employee would be discharged without just cause; that an employee would be discharged without prior disciplinary measures only if the case warranted severe disciplinary action." Plaintiff relied, he asserts, on these policies and procedures.

Plaintiff alleges that he received "regular advancements, merit increases and commendatory evaluations during his employment." On April 1, 1980, he was promoted to the position of vice president-treasurer, a position he held until the date of his termination, March 2, 1981.

As a "corporate officer and senior corporate executive" he alleges a responsibility to direct and implement corporate policy and to prevent conduct injurious to the corporation. He voiced concerns and took steps to influence and change the corporate policy manifested by the conduct of Liberty House security personnel (strip searching of suspected shoplifters) which, he states, is illegal and violative of personal rights. That in retaliation for his efforts to bring Liberty House security practice in compliance with law, he was terminated without just cause.

The seventh cause of action (labeled "Breach of Contract") essentially repleads the allegations of the sixth cause of action except that it ignores those charges relating to retaliatory termination.

The eighth cause of action (labeled, "Breach of the Implied Covenant of Good Faith and Fair Dealing") repleads virtually all the allegations of the sixth and seventh causes of action and, in addition, alleges AMFAC's publication of a false statement as another basis supporting a breach of the implied covenant of good faith and fair dealing.

Defendants responded to the second amended complaint by filing a general demurrer to each of the amended causes of action. At the same time defendants requested that judicial notice be taken of the earlier summary adjudication rulings.

The court sustained the demurrer without leave to amend holding that the sixth, seventh, eighth and ninth causes of action failed to state facts sufficient to constitute a cause of action.[2] The seventh cause of action was sustained on the additional ground that it was barred by the statute of frauds. (Civ. Code, § 1624.)

*Appeal*

I

We must first address the legal effect of the summary adjudication rulings on the demurrer to the employment termination causes of action of the second amended complaint. As we have seen, defendants' demurrer to the second amended complaint was accompanied by their request that the court take judicial notice of its prior summary adjudication rulings. While the record does not contain a specific ruling or order of the court relating to the disposition of this request it seems clear that the court, in some measure, judicially noticed matters which had previously been summarily adjudicated. The court stated in its opening remarks at the hearing on demurrer to the second amended complaint: "Some of these matters raised by demurrer were disposed of by way of the summary judgment ruling or summary adjudication of issues which was signed the same date that the demurrer was raised. So some of these are now moot. *That's the ground for most of the tentative ruling.*" (Italics added.)

A motion for summary judgment may effectively operate as a motion for judgment on the pleadings. (*Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1171 [226 Cal.Rptr. 820].) The grounds for the motion are, however, the same as for a general demurrer, that is, failure to state a

---

[2] The court also granted defendants' motion to strike amendments to the ninth cause of action. This motion was based on the ground that the court had not granted leave to amend this cause of action when it sustained the demurrer to the first amended complaint.

cause of action. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, §§ 262-263, pp. 563-565.) In deciding a motion for judgment on the pleadings, a court must accept the allegations of the complaint as true. In our opinion it was inappropriate and bad motion practice for defendants to submit to the court for summary adjudication, matters which essentially tested the sufficiency of the pleadings. Nor was it appropriate for the trial court to decide pleading sufficiency questions as issues without substantial controversy.

This case illustrates why, in preparing and ruling upon motions for summary adjudication under Code of Civil Procedure section 437c, subdivision (f), the parties and the court should take care to distinguish between the sufficiency of the pleadings and the sufficiency of the evidence. ■ On summary judgment motions, the pleadings always define the issues. (See *Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 885 [164 Cal.Rptr. 510, 610 P.2d 407], reversed on other grounds in *Metromedia, Inc.* v. *San Diego* (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882].) Clearly, the same rule must apply to the summary adjudication of issues procedure. *If the pleadings are not defective,* the court may then determine from the evidence in support of and in opposition to the motion "whether the triable issues apparently raised by them are real or merely the product of adept pleading." (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981] and *C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483], both citing *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].)

If the court finds that the pleading is insufficient, it has discretion, as the court did here, to grant the opposing party leave to amend. (See *Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605, 611 [163 Cal.Rptr. 477]; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 128 [109 Cal.Rptr. 724].) However, a court granting plaintiff leave to amend a cause of action should not at the same time attempt to summarily adjudicate material issues which underlie that same cause of action. After a cause of action is amended, the court may rule in favor of the defendant if, upon subsequent motion, or perhaps renewal of the earlier motion if appropriately framed, it is shown (a) that plaintiff simply cannot state a cause of action on the theory relied upon (in effect a judgment on the pleadings *without* leave to amend, see *Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219]) or (b) there are no triable material issues of fact which would permit recovery on that theory. (Code Civ. Proc., § 437c, subd. (c).) To avoid confusion and unnecessary delay, it is important to keep in mind the two-step process—first weighing the sufficiency of the causes of action stated, and then if necessary, determining whether there are triable issues underlying those causes. (See *Slaughter* v.

*Legal Process & Courier Service* (1984) 162 Cal. App.3d 1236, 1244 [209 Cal.Rptr. 189].)

■ Here, the trial court determined in its summary adjudication order that plaintiff's employment was terminable at will, with or without cause (ruling No. 1). It also decided that defendant did not breach the oral employment agreement (ruling No. 6). At the same time the court found a failure to state facts sufficient to constitute a cause of action for breach of oral employment contract (ruling No. 7) and granted leave to amend the oral employment contract cause of action. A substantially amended second complaint was filed. It was error for the trial court to then test the sufficiency of the oral employment allegations of the second amended complaint, by relying, through judicial notice, upon issues determined to be without substantial controversy when those issues had been measured against allegations of a pleading that had been superseded.

Similarly, it was error for the court to rely on a summary adjudication that no public policy was violated by termination (ruling No. 2), when plaintiff had been given leave to amend to plead a public policy violation and the first amended complaint was superseded. For the very same reason, it was error for the trial court to rely on its adjudication of no breach of the implied covenant of good faith and fair dealing (ruling No. 4) when the allegations of that cause of action were materially changed in the second amended complaint pursuant to the court order granting leave to amend with respect to that summary adjudication.

We must, therefore, look anew to the allegations of the sixth, seventh and eighth causes of action of the second amended complaint without regard to the trial court's summary adjudication of issues respecting those causes of action. ■ Our standard of review is well established. "'A demurrer admits all material and issuable facts properly pleaded. [Citations.]' [Citation.] 'However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.] ■ In determining whether or not the complaint is sufficient, as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.]" (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

## II

The general rule governing the duration of employment contracts, codified as Labor Code section 2922, provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other." ■ This statute creates a presumption that an employment contract for an indefinite period of time is terminable at will. (*Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749 [200 Cal.Rptr. 605]; *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 324 [171 Cal.Rptr. 917].) However, recent case law has indicated that the presumption may be rebutted by both tort and contract theories.

Here, there can be no dispute that the agreement alleged by plaintiff is for an unspecified term and is, therefore, presumed a contract at will within the meaning of Labor Code section 2922. The plaintiff's second amended complaint attempts to overcome the presumption on several theories. While the allegations have been generally intermixed by repetitive pleading and incorporation throughout the sixth, seventh and eighth causes of action, three distinct theories emerge. The sixth cause of action seeks a tort remedy for wrongful discharge based upon an alleged violation of public policy by the employer. The seventh cause of action seeks to recover for breach of oral contract predicated upon a implied-in-fact promise that the employer would not terminate except for good cause. The eighth cause of action returns to a tort remedy allegedly arising out of a breach of the implied covenant of good faith and fair dealing.

## III

■ A principal limitation on an employer's right to terminate an at-will employment relationship arises where the "discharge of an employee violates fundamental principles of public policy." (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].)

*Tameny* stands for the proposition that ". . . when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 170.) The theoretical reason for labeling the discharge wrongful in such cases is not based on the terms of the employment contract, but rather arises out of a duty implied in law on the part of the employer to conduct its affairs in compliance with public policy. (*Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d at p. 1166.)

■ Plaintiff incorrectly maintains that his sixth cause of action specifically alleges a "whistleblowing" theory for his discharge. Such a theory, he submits, constitutes a valid cause of action for wrongful discharge in violation of public policy.

Labor Code section 1102.5, subdivision (b), provides: "No employer shall retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation." Since plaintiff never went to a governmental agency concerning his complaints, the statute is clearly inapplicable to him and he has not stated a cause of action under the "whistleblowing" theory.

■ Citing footnote 14 in *Pugh,* plaintiff also asserts that there may be "a public policy which favors protection of employees against dismissal for voicing concerns, within an enterprise, concerning the legality or morality of enterprise conduct." (*Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at p. 324.)

Plaintiff also relies on the holdings in *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167 [plaintiff's refusal to participate in an illegal price fixing scheme], *Dabbs* v. *Cardiopulmonary Management Services* (1987) 188 Cal. App.3d 1437 [234 Cal.Rptr. 129] [employee terminated in retaliation for refusal to work in an understaffed respiratory care department], *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015] [employee terminated in retaliation for efforts to obtain a smoke-free work place], and *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25] [discharge for failure to commit perjury], for the proposition that a former employee states a tortious cause of action for wrongful discharge where it is alleged the employee was terminated in retaliation for complaining to management that the employer's acts violated public policy. We agree that in the absence of "whistleblowing" plaintiff may still state a cause of action for wrongful discharge in violation of public policy.

Plaintiff cites Penal Code section 490.5. Our Supreme Court said of the statute, as written at the time of the alleged incident in October 1980: "The limits of the merchant's authority to search is now expressly stated in Penal Code section 490.5. Paragraph (3) of subdivision (e) provides that 'During the period of detention any items which a merchant has reasonable cause to believe are unlawfully taken from his premises *and* which are in plain view may be examined by the merchant for the purposes of ascertaining the ownership thereof.' [Italics by court] Neither the statute nor the privilege

which it codified purport to give to the merchant or his employees the authority to search." (*People* v. *Zelinski* (1979) 24 Cal.3d 357, 363-364 [155 Cal.Rptr. 575, 594 P.2d 1000].)

■ Where, as here, the former employee pleads: (1) the employer's policy to contravene a statutory proscription affecting matters relating to the employer's business; (2) the employee's protest to company management regarding the unlawful policy; and (3) retaliatory termination of employment resulting from the protest, a tort cause of action for wrongful discharge based upon public policy has been stated.

■ We conclude plaintiff has stated a cause of action for wrongful termination in violation of public policy. The demurrer to the second amended complaint was improperly sustained. It is for the trier of fact to determine whether the allegations are true.

### IV

We next turn to plaintiff's seventh cause of action, labeled "Breach of Contract."

■ A second limitation on the employer's right to discharge an at-will employee is "when the discharge is contrary to the terms of the agreement, express or implied." (*Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at p. 322.) "Such a contract limitation may take the form of a promise of permanent employment so long as the work is satisfactory [citation], or some other express or implied promise based on the employer's words, conduct, custom or a combination thereof to terminate the employment only for good cause. [Citation.] Such a promise implied into the employment contract permits an employee under an employment contract for an unspecified term, and thus presumptively terminable at will, to recover for breach of contract if he or she is discharged without good cause. [Citations.] However, such a wrongful termination constitutes a nontortious 'wrongful discharge,' a breach of the implied in fact promise to discharge only for good cause and, thus, a breach of the employment contract. The damages recoverable are limited to those allowed for breach of contract. [Citation.]" (*Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d at pp. 1166-1167.) The question of whether an implied in fact promise has been made is normally a question for a jury, rather than a court, to decide. (*Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896, 905 [185 Cal.Rptr. 617].)[3]

---

[3] However, see *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299 [231 Cal.Rptr. 820], where evidence of an implied agreement which contradicted the terms of a written agreement held inadmissible.

■ Plaintiff argues on appeal that his seventh cause of action contains sufficient allegations to demonstrate an implied in fact promise not to terminate except for good cause, thus invoking the second limitation to the employer's right to discharge him at will. The relevant allegations set forth, among other things, that 1) defendants orally represented to plaintiff that his employment would be continuous, subject to discharge only for cause; 2) an understanding that defendant AMFAC's policy and procedure manuals applied to his employment; 3) the policy and procedures manual provided that no employee would be discharged without just cause; and 4) plaintiff received regular advancements, merit increases in salary and commendatory evaluations during his eight-year employment with AMFAC. Based upon these allegations, plaintiff has sufficiently stated a cause of action based upon an implied in fact promise only to terminate for good cause. Again, it is for the trier of fact to determine whether the allegations are true.

■ The underlying agreement which formed the basis for plaintiff's contract theory of recovery is an oral agreement for an unspecified term. The trial court in sustaining the general demurrer found, in addition to the failure to factually state a cause of action, that the seventh cause of action was barred by the statute of frauds. The question of whether the oral contract is barred by the statute of frauds is a difficult problem.[4]

Civil Code section 1624 provides in pertinent part: "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] (a) An agreement that by its terms is not to be performed within a year from the making thereof." There is a split of authority as to the applicability of the statute to employment contracts such as the one at issue in the present case.

The traditional rule in California is that oral employment contracts without termination dates are enforceable because they can be performed in less than one year, even if the job actually lasts longer. (*White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 344-346 [66 Cal.Rptr. 697, 438 P.2d 345].)

However, in *Newfield* v. *Insurance Co. of the West* (1984) 156 Cal.App.3d 440 [203 Cal.Rptr. 9], the Court of Appeal held that the rule does not apply to a case such as this. In *Newfield,* the plaintiff alleged an oral contract for permanent employment. Despite the traditional view that such a contract could conceivably be performed within one year by the termination of the

---

[4]The issue is presently pending in the Supreme Court in *Foley* v. *Interactive Data Corp.* (1985) 184 Cal.App.3d 241, review granted January 30, 1986 (L.A. 32148).■

employment agreement by one party and thus was not subject to Civil Code section 1624, the court stated: "Appellant cannot have it both ways. Either his employment relationship was a contract in which both parties had equal rights to terminate at will (in which case it was not a violation of the statute of frauds), or it was a contract where the employer did not have the right to terminate at will, and there was a reasonable expectation of employment for more than one year (in which case the statute of frauds does apply, barring this action.)" (*Id.* at p. 446.) Since the plaintiff was taking the position that she had a contract for more than one year, the *Newfield* court concluded that the statute of frauds applies to bar the plaintiff's complaint.

In contrast, at least two cases have declined to follow the holding in *Newfield*. (See *Steward* v. *Mercy Hospital* (1987) 188 Cal.App.3d 1290 [233 Cal.Rptr. 881]; *Gray* v. *Superior Court* (1986) 181 Cal. App.3d 813, 822 [226 Cal.Rptr. 570].) We find the analysis in *Steward* persuasive: "The reasoning of *Newfield* in this regard, and perhaps that of the Supreme Court in denying the petition for hearing, appears to rely on that particular agreement which is characterized as a contract for 'permanent' employment, but that characterization may be misleading. [Citation.] *Pugh* noted that '[i]n one of the earliest California cases on this subject, the Supreme Court interpreted a contract for permanent employment as meaning "that plaintiffs' employment . . . was to continue indefinitely, and until one or the other of the parties wish, *for some good reason,* to sever the relation." [Citation.]' . . . *Pugh* recognized that a contract which limits the power of the employer with respect to reasons for termination is no less enforceable because it places no equivalent limits upon the power of the employee to quit his employment. [Citation.] Thus, such a contract is capable of being performed within one year, for even though the employer may not be permitted to terminate an employee without good cause, good cause may exist within one year and, also the employee may still terminate at will, i.e., within one year of formation of the contract." (*Steward* v. *Mercy Hospital, supra,* 188 Cal.App.3d at p. 1296; accord, *Eisenberg* v. *Insurance Co. of North America* (9th Cir. 1987) 815 F.2d 1285, 1291.)

Because we find that the better view is that an oral contract for permanent employment is not barred by the statute of frauds, we conclude that plaintiff has stated a cause of action for breach of an oral contract, the enforceability of which will be dependent, in the first instance, upon plaintiff successfully proving an implied-in-fact promise by the defendant not to terminate except for good cause.

## V

We now consider plaintiff's eighth cause of action which seeks to impose a tort remedy against the defendant for breach of the implied covenant of

good faith and fair dealing. (Hereafter, the "implied covenant.") This theory of tort recovery in a contractual setting has been the source of much confusion and uncertainty when its application has been directed to employment termination cases.

 Plaintiff's eighth cause of action alleges nothing more than the facts contained in the sixth and seventh causes of action: that defendants expressly or impliedly promised to terminate him only for good cause; that he was terminated without good cause in violation of company policies and in violation of public policy; and that defendants intended to deprive him of the benefits of his employment contract.[5] As we explain below, these allegations do not state a cause of action for tortious breach of the implied covenant. The trial court correctly sustained defendants' demurrer to this cause of action.

Whether a cause of action for breach of the implied covenant can be stated depends in part on whether the employment contract is terminable at will or terminable only for cause. We discuss first whether a cause of action can be stated if the contract were found to be terminable at will.[6]

We reiterate the general rule that Labor Code section 2922 "creates a presumption that an employment contract [for an indefinite period of time] is terminable at will." (*Hillsman* v. *Sutter Community Hospitals, supra,* 153 Cal.App.3d at p. 749; *Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at p. 324.) The legislative history of section 2922 is instructive as to legislative intent regarding at will employment.

Civil Code section 1999, enacted in 1872, provided: "An employment having no specified term may be terminated at the will of either party, on notice to the other, except where otherwise provided by this Title."

In 1915, Civil Code section 1999 was amended to provide: "An employment having no specified term, may be terminated at the will of either party, on notice to the other. Employment for a specified term shall mean an employment for a period greater than one month." (Stats. 1915, ch. 433, p. 720.)

The so-called at-will statute remained unchanged until 1937 when the Labor Code was enacted. Section 2922 of the new code essentially reenacted

---

[5] We acknowledge plaintiff's contention that AMFAC's publication of a false statement is another ground supporting a breach of the implied covenant. Because we determine in part VI of this opinion that the published statement was in fact true, we need not concern ourselves with the allegation.

[6] We note that the trial court prematurely ruled that the contract was terminable at will in the ruling on the motion for summary adjudication of issues. It may be that plaintiff cannot prove an implied in fact contract to terminate only for cause.

former Civil Code section 1999. Thereafter, in 1969, section 2922 was amended. As amended the statute reiterated that an employment having no specified term could be terminated at will and added provisions regarding garnishment of wages with which we are unconcerned. In 1971, section 2922 was amended twice. (See Stats. 1971, ch. 1580, § 1, p. 3186; Stats. 1971, ch. 1607, § 2, p. 3459.) The final amendment merely deleted that portion of the statute which referred to garnishment procedures, thus leaving intact the at-will provisions.

■ It is well established that "failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (*Williams* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 618, 620 [51 Cal.Rptr. 277, 414 P.2d 405], quoting *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 618 [7 Cal.Rptr. 129, 354 P.2d 657].)

The legislative policy expressed in Labor Code section 2922 was acknowledged by our Supreme Court in *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713 [73 Cal.Rptr. 213, 447 P.2d 325]. There, Justice Sullivan speaking for a unanimous court commented: "Contracts of employment wherein the only consideration is the services to be performed thereunder and which are silent as to duration, are terminable at will upon reasonable notice *without regard to duration*. [Citations.] Special policy considerations require this result. '[T]he courts have not deemed it to be their function, in the absence of contractual, statutory or public policy considerations, to compel a person to accept or retain another in his employ, nor to compel any person against his will to remain in the employ of another. Indeed, they have consistently held that in such a confidential relationship, the privilege [to terminate] is absolute, and the presence of ill will or improper motive will not destroy it.' [Citation.]" (*Id.* at p. 727, fn. 12; italics in original.)

■ A cardinal rule of statutory construction is that ". . . where the Legislature has expressly declared its intent, we [the court] must accept the declaration." (*Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 10-11 [106 Cal.Rptr. 761, 507 P.2d 65]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 256-257 [104 Cal.Rptr. 761, 502 P.2d 1049].) It is axiomatic that statutes embody fundamental principles of public policy. (See 1 Sutherland, Statutory Construction (4th ed. 1985) § 1.03, p. 5.) ■ Thus, where the declared public policy of this state, as reflected by Labor Code section 2922, is that an employment relationship having no specified term may be terminated *at the will* of either employer or employee, it is not the prerogative of the judicial branch of government, absent some compelling reason based on fundamental public policy or statutory direction, to impose a limitation on

the exercise of that right. ▮▮▮▮ Basic to our system of government is the well settled principle that ". . . absent a constitutional basis for departure from a clear expression of legislative intent, we are bound thereby." (*Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 120 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204].) As we have seen, the clarity of legislative intent expressed in Labor Code section 2922 and the absence of constitutional infirmity in the enactment of that section, has been acknowledged by our Supreme Court in *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union, supra,* 69 Cal.2d 713.

Moreover, while steadfastly retaining the fundamental public policy permitting at-will termination in an employment relationship having no specified term, the Legislature has not been reluctant to impose statutory limitations on the employers' exercise of the termination right when policy considerations deemed it appropriate to do so. The text, Wrongful Employment Termination Practice (Cont.Ed.Bar 1987) sections 2.9-2.30, pages 29-38, demonstrates the extent of legislative concern in this area. Paraphrasing this commentary we observe:

The California Fair Employment and Housing Act (Gov. Code, §§ 12900-12996) prohibits discrimination against employees because of race, color, religion, national origin, physical handicap, medical condition, ancestry, marital status, sex and pregnancy. (Gov. Code, §§ 12940, subd. (a); 12945, subd. (a).) An employee pursuing a civil action under the FEHA may seek punitive damages (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211 [185 Cal.Rptr. 270, 649 P.2d 912]), and upon prevailing may also recover attorney fees. (Gov. Code, § 12965, subd. (b).) The FEHA contains anti-retaliation provisions prohibiting the discharge of an employee who participates in an FEHA proceeding or who opposes any discriminatory practice forbidden by the FEHA. (Gov. Code, § 12940, subd. (f).)

Employees who complain about work place safety or who refuse to perform work in circumstances violative of Cal. OSHA standards are protected from discharge. (Lab. Code, §§ 6310, 6311.) Although an administrative remedy has been afforded (Lab. Code, § 6312), *Hentzel* v. *Singer Co., supra,* 138 Cal.App.3d at page 299 held that remedy not exclusive and permitted a common law tort action for wrongful discharge under the policy theory expressed in *Tameny.*

Statutory protection from discharge is also extended to "whistleblowing" employees (Lab. Code, § 1102.5); to wage claimants (Lab. Code, § 98.6); to the industrially injured employee (Lab. Code, § 132a); to employees who serve as jurors or are summoned as witnesses (Lab. Code, § 230); to em-

ployees engaging in political activity (Lab. Code, §§ 1101, 1102), or who refuse to participate in an abortion (Health & Saf. Code § 25955, subd. (a)), or who report patient abuse (Gov. Code, § 12940, subd. (e)) or refuse to take a polygraph test in the private sector (Lab. Code, § 432.2), or whose wages are garnished (Lab. Code, § 2929, subd. (e), or who serve as election officers (Elec. Code, § 1655), or who hold military memberships or perform military duty (Mil. & Vet. Code, § 394), among others.

These numerous statutory expressions of public policy limiting an employer's unfettered discretion in terminating employees provide further evidence of the legislative resolve to maintain the underlying policy of at-will termination found in Labor Code section 2922. Certainly the judiciary must be most circumspect and restrained in its treatment of the legislative product. Judicial exceptions to this underlying policy, when not based on statutory authority should be concerned with only the most egregious of employer conduct, i.e., conduct which is " '. . . obnoxious to the interests of the state and contrary to public policy and sound morality. . . .' " (*Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 173, citing *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d at pp. 188-189.) The implied covenant may not be construed as creating a right in the employee to be discharged only for cause in contradiction to the fundamental public policy expressed in Labor Code section 2922.

It is well settled that the implied covenant exists in every contract. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].) While this is true, ". . . the proposition . . .—that breach of the covenant always gives rise to an action in tort—is not so clear." (*Ibid.*) While both *Tameny* and *Seaman's* intimated that ". . . breach of the covenant . . . in the employment relationship *might* give rise to tort remedies," (italics added) neither case declared that proposition, nor examined the policy considerations that might apply to the various types of employment relationships, nor considered the Supreme Court's earlier policy pronouncement in *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union, supra,* 69 Cal.2d 713. (See *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 179, fn. 12; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 769, fn. 6.)

When considering whether to apply the tort remedy contained within the implied covenant to employment termination cases, it is essential that the heterogeneous nature of employment relationships be taken into account. The standards we create apply equally to the economically marginal employer of one or two employees as well as to the presumably profitable major corporate enterprise. Furthermore, the reasonable expectations of the

contracting parties vary depending upon the nature of the employment relationship.

"Broadly stated, that [implied] covenant requires that neither party do anything which will deprive the other of the *benefits of the agreement.*" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 768; italics added.) Justice Kaufman, paraphrasing *Gruenberg* v. *Aetna Ins. Co., supra,* comments: "the obligations imposed by the implied covenant . . . are not those set out in the terms of the contract itself, but rather are obligations imposed by law governing the manner in which the *contractual obligations* must be discharged—fairly and in good faith. [Citation.] While the specific nature of the obligations imposed by the implied covenant . . . are *dependent upon the nature and purpose of the underlying contract and the legitimate expectations of the parties arising from the contract* [citations], those obligations are not the obligations that were consensually undertaken in the contractual provisions, and care must be taken in each case to determine whether the alleged breach is an obligation imposed by law and thus a tort [citation] or breach of an obligation consensually created by the parties in the terms of the contract and thus simply a breach of contract . . . ." (*Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d at p. 1169; italics added.)

It is apparent that continuous employment is not a "benefit of the agreement" where the employment relationship is strictly at will. The "legitimate expectations" of employee and employer in an at-will employment relationship can be no more than the continuation of employment until one party or the other decides to terminate the relationship. When that decision is made, " '. . . the privilege [to terminate] is absolute, and the presence of ill will or improper motive will not destroy it.' [Citation.]" (*Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union, supra,* 69 Cal.2d 727, fn. 12.) Moreover, the privilege to terminate may be exercised "*without regard to* [*the*] *duration*" of the at-will employment relationship. (*Ibid.*)

Simply stated, where the at-will employment relationship is terminated, the employee cannot complain about a deprivation of the benefits of continued employment, for the agreement never provided for a continuation of its benefits in the first instance. To hold otherwise, in our opinion, would constitute an unwarranted judicial intrusion upon the fundamental public policy of this state as expressed in Labor Code section 2922 and dramatically upset the reasonable expectations of the parties to an at-will agreement of employment.[7]

---

[7] As we are most concerned with the application of the implied covenant to at-will employment contracts, we take this opportunity to deal with a recent criticism by a Ninth Circuit panel of our decision in *Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra,* 187

■ Next, we consider whether plaintiff can state a cause of action for tortious breach of the implied convenant where he has pleaded an express or implied promise to terminate only for cause. The situation changes where the employee pleads and proves an employment contract for a definite term, which by statute is deemed terminable only for cause (see Lab. Code, § 2924), or where the employee pleads and proves an implied-in-fact promise by the employer not to terminate the employment relationship except for good cause. These situations significantly differ from the at-will employment relationship because in each there are consensually imposed limitations upon termination, one expressed by statute, the other implied by law. In each instance the employee has a reasonable expectation of continuing benefits from the agreement absent good cause for termination.

■ Ordinarily, where a good cause limitation for termination exists in the employment agreement, the employee's remedy is confined to contractual damages as the harm suffered arises from a breach of a consensual provision of the contract. ■ However, where the employee has pleaded and proved an express or implied good cause limitation on the employer's right to discharge, and a breach thereof, then in certain limited circumstances the employee may pursue a tort remedy based upon a breach of the implied covenant of good faith and fair dealing.

The circumstances allowing pursuit of the implied covenant tort remedy in an employment termination case where good cause is the criteria for

Cal.App.3d 299. The criticism is found in *Huber* v. *Standard Ins. Co.* (9th Cir. 1988) 841 F.2d 980, 984, footnote 1, and states: "At least one court has held that there can be no breach of the covenant of good faith and fair dealing when a written contract provides for termination at any time. [*Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra.*] This case, however, in so holding confuses breach of the implied covenant of good faith and fair dealing with breach of an implied in fact promise, and in fact cites to the part of [*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467 [199 Cal.Rptr. 613]], discussing the implied in fact promise and applies it to the implied covenant."

Respectfully, we find this comment seriously flawed. In the first place, *Huber's* comment regarding our citation to *Shapiro* is simply incorrect. The *Shapiro* citation (p. 482) was directed to the proposition that an express written agreement defining the employment relationship as at will precludes a contradictory implied promise to discharge only for good cause. *Malmstrom* (p. 317) was addressing the same point which, by itself, has nothing to do with the implied covenant. The rule is: "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results. [Citations.]" (*Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 482.)

Secondly, we disagree with *Huber's* conclusory statement that we somehow confused the breach of the implied covenant with the breach of an implied-in-fact promise. Where the employment relationship is strictly at will, as it was expressly defined to be in *Malmstrom's* written contract, it is our view that the implied covenant will not apply to impose a tort remedy. The single exception is where the at-will employee has a reasonable expectation of contractual benefit which is not dependent upon a showing of continuing employment absent good cause, and a bad faith termination by the employer coupled with the employer's wrongful intent to deprive the employee of that benefit of the agreement. (*Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250 [215 Cal.Rptr. 860]; see discussion *infra.*)

discharge exist when the employer ". . . in addition to breaching the contract . . . seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists," (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 769), or where the obligor (employer) engages ". . . in bad faith action, extraneous to the contract, with the motive intentionally to frustrate the obligee's [employee's] enjoyment of contract rights. [Citations.]" (*Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].)

■ However, it must be emphasized that the sine qua non for application of the implied covenant in an employment termination case is the *employees reasonable expectation of benefit* from the agreement. Where the discharged employee has pleaded and proved a good cause limitation on the right to terminate, that expectation is directed to *continuing benefits* from the agreement. Where the employment is strictly at will, there may exist in certain employment relationships an expectation of a contractual benefit which is independent of continuing employment.

■ Having determined that plaintiff's seventh cause of action pleads a contractual cause of action predicated upon an implied-in-fact promise not to discharge except for good cause, we must now consider the sufficiency of the allegations of the eighth cause of action to determine whether, under the standards established in *Seaman's* and *Sawyer,* a tort cause of action based upon the implied covenant has been stated by plaintiff. We conclude it has not.

*Seaman's* observed: "Of course, 'it is not a tort for a contractual obligor to dispute his liability under [a] contract' (*Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623]) if the dispute is honest and undertaken in good faith. [Citation.] Similarly, it is not a tort for one party to deny, in good faith, the existence of a binding contract." (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 770.) Nothing in the pleading before us suggests "stonewalling" by the defendants here, a posture which the *Seaman's* court criticized. (*Id.* at p. 770.) Plaintiff does not allege that defendants without probable cause deny the existence of the employment contract or that defendants assert in bad faith a pretextual reason for his discharge. Nor does plaintiff plead any action by defendants extraneous to the employment contract. Simply stated, no facts are alleged by plaintiff to suggest he could state a cause of action for breach of the implied covenant. The court did not abuse its discretion in sustaining the demurrer.

However, we earlier stated that the sine qua non for application of the implied covenant in an employment termination case is the employee's

reasonable expectation of benefit from the agreement. ▇▇▇ We pointed out that the expectation is present where a good cause limitation on termination has been pleaded and proved. We also observed that an expectation of benefit, independent of continuing employment, may exist in an at-will employment relationship.

The case of *Khanna v. Microdata Corp., supra,* 170 Cal.App.3d 250, highlights an exception to the rule we advance that the implied covenant does not provide a tort remedy in at-will employment termination cases. The *Khanna* court elected to sustain a general verdict favoring the plaintiff on the theory of breach of the implied covenant, one of four theories of recovery presented to the jury. A brief summary of the case is necessary to understand its rationale.

The plaintiff Khanna was an at-will employee. He was employed by Microdata for two and a half years before being terminated. He joined Microdata's sales force after receiving a written assurance that a certain desirable customer would be assigned as his account. Khanna would receive commissions on sales of computer equipment to this account whether the sales were made by him or others. The original written assurance had provided for percentage commissions according to a specified schedule. After the employment began, Microdata unilaterally altered the commission compensation terms, much to Khanna's dissatisfaction. His attempts to resolve the commission dispute with his employer were essentially ignored by the latter and Khanna filed suit against his employer. The litigation proceeded to its scheduled trial date at which point, discovering that his attorney had failed to request a jury trial, Khanna requested and received a trial continuance.

On the same date he was deprived of his jury trial, Khanna received written notice of his termination. He was informed that because of his "unfounded representations as to commitments of Microdata and its personnel," he was discharged for "disloyalty." (*Khanna v. Microdata Corp., supra,* 170 Cal.App.3d at p. 257.)

After hiring new counsel, Khanna dismissed his original suit and filed a new action which eventually resulted in a verdict favorable to him.

The trial record in *Khanna* was replete with evidence that even after filing his lawsuit he continued to exercise his best efforts to sell his employer's products. He was praised by his superiors on his sales performance and six weeks before his termination he ranked sixth best among Microdata's national sales force. As an account manager, he was subject to a written agreement with his employer that provided for forfeiture of commissions on

sales that were not "booked, installed, and paid for" at the time of an account manager's termination. The evidence revealed that at the time of Khanna's termination there were commissions pending on $250,000 in sales that had not yet matured under the commission compensation plan. *(Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d at p. 257.)

Under these circumstances the *Khanna* court found substantial evidence to support a jury determination that the defendant had engaged in "bad faith action, extraneous to the contract, with the motive intentionally to frustrate [plaintiff's] enjoyment of his contract rights." The factual issue, which the jury was required to resolve, was "whether Microdata had discharged [*Khanna*] in good faith because the lawsuit genuinely interfered with his ability to perform his job and amounted . . . to disloyalty, or alternatively, whether Microdata discharged [*Khanna*] in bad faith retaliation for bringing the suit and for the purpose of denying him the benefits of his employment." (*Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d at p. 263.)

Thus, the lesson of *Khanna* is that the implied covenant tort remedy may be applied to an at-will employment termination case under certain limited circumstances. The elements giving rise to the cause of action are these: (1) the employee's expectation of benefit from the contract; (2) the expectation of benefit is not dependent upon a continuous employment relationship which can only be terminated for good cause; and (3) a bad faith termination coupled with the wrongful intent of the employer to deprive the employee of that benefit of the agreement.

Both contractual and policy considerations join to justify imposing an implied covenant tort remedy in an at-will employment termination case where there is a convergence of the elements we have defined. There exists a bargained for contractual benefit which the employee has reason to expect will be observed by the employer in good faith. There is also an offense against "accepted notions of business ethics" where the employer in bad faith and with the wrongful intent to deprive the employee of that contractual benefit terminates the relationship. Such conduct transcends a mere breach of contract and warrants a remedy sounding in tort. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 770.)

Measuring the allegations of plaintiff's eighth cause of action by the above criteria we conclude that he has failed to state a cause of action for breach of the implied covenant. On remand, however, he may be able to allege facts sufficient to state a cause of action for breach of the implied

covenant. He should be given the opportunity to amend the eighth cause of action should he request it.

## VI

Finally, we consider plaintiff's ninth cause of action for defamation. The first amended complaint alleged that on or about March 10, 1981, defendants caused to be published in various newspapers an article which was understood by readers to mean that plaintiff had been discharged for some impropriety.[8]

As previously reported, the trial court summarily adjudicated certain matters relating to this cause of action. It determined that plaintiff's admission that the alleged defamatory statement was true defeated plaintiff's ninth cause of action for defamation (ruling No. 8). Again, mixing sufficiency of the pleadings with sufficiency of the evidence, the court also ruled that plaintiff's ninth cause of action failed to state a cause of action for defamation (ruling No. 9). However, unlike the other causes of action, the trial court did not grant leave to amend the ninth cause of action and, moreover, struck amendments to the ninth cause of action which were presented in the second amended complaint. Under these circumstances we can proceed to examine the merits of the summary adjudication.

█ Summary judgment is properly granted where the evidence in support of the moving party conclusively negates a necessary element of the plaintiff's case or establishes a complete defense. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 661-662 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].)

In deposition and in his opposition papers, plaintiff effectively conceded that the statement in the Wall Street Journal article claimed to be defamatory (i.e., that plaintiff's departure from AMFAC had nothing to do with improper conduct on his part) was true. █ Truth is an absolute

---

[8] Attached to plaintiff's complaint as exhibit A was the following article from the March 11, 1981, issue of the Wall Street Journal: "Amfac Dismisses Hejmadi As Vice President, Treasurer. SAN FRANCISCO —Amfac Inc. dismissed its vice president and treasurer, Vivek Hejmadi, and indicated that Thomas L. Braje, an assistant vice president, would succeed him. [¶] Mr. Hejmadi, 37 years old, had held his post since 1978. He was asked to leave because of a 'growing awareness that our management styles didn't mesh,' a senior Amfac official said. Mr. Hejmadi couldn't be reached for comment. [¶] The Amfac official emphasized that Mr. Hejmadi's departure stemmed from 'a difference of philosophy; there was absolutely nothing improper going on.' [¶] The Amfac official said Mr. Hejmadi will pursue 'other business interests' of an undisclosed nature. [¶] Mr. Braje, also 37, was named acting treasurer and will be named vice president and treasurer at a March 20 board meeting, the official said. [¶] Amfac is based in Honolulu but its finance division is based in San Francisco. The company, whose 1980 revenue totaled $1.9 billion, has interests in agriculture, distribution, real estate, retailing and food processing."

defense to an action for defamation, regardless of the existence of malice or bad faith. (*Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal. App.2d 147, 164; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 494, p. 583.) **(26)** A party is bound by admissions made in the course of discovery and, on motion for summary judgment, no further evidence of the matters so deemed admitted is required. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10]; *Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1141 [213 Cal.Rptr. 750]; *King* v. *Anderson* (1966) 242 Cal.App.2d 606, 609 [51 Cal.Rptr. 561].) Plaintiff's admission of truth bars his defamation cause of action. Thus, the court's summary disposition of the ninth cause of action and subsequent order striking it from the complaint, were proper.

The judgment is reversed. Plaintiff is awarded for his costs on appeal.

Rouse, J., and Smith, J., concurred.