**Ralph B. MUNDY, Plaintiff–Appellant,**

v.

**HOUSEHOLD FINANCE CORPORA-TION, Defendant–Appellee.**

**No. 88–5605.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1988.

Decided Sept. 6, 1989.

Gregory A. Wedner, Bergman & Wedner, Los Angeles, Cal., for plaintiff-appellant.

G. Howden Fraser, McKenna, Conner & Cuneo, Los Angeles, Cal., for defendant-appellee.

Before POOLE, REINHARDT and KOZINSKI, Circuit Judges.

POOLE, Circuit Judge:

Ralph Mundy brought suit in a California state court against his former employer, Household Finance Corporation (hereafter HFC), claiming that his termination violated California and federal law. HFC, a Delaware corporation with its principal place of business in Illinois, removed the case to federal court based on diversity of citizenship. 28 U.S.C. § 1332. The district court granted summary judgment for HFC on all claims. Mundy now appeals the district court's grant of summary judgment on his claims based on the implied covenant of good faith and fair dealing, the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and the California Fair Employment and Housing Act (FEHA), Cal.Gov't Code § 12921. He also appeals the decision of the trial court to exclude evidence of HFC's offer of payment in exchange for a release of claims in considering HFC's second summary judgment motion.

This court has jurisdiction over his appeal of a final order of the district court under 28 U.S.C. § 1291. We review *de novo* the district court's order granting summary judgment. *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 798 (9th Cir. 1987). Evidentiary rulings are reviewed for abuse of discretion and are not reversed absent some prejudice. *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986).

## FACTS

Mundy was first employed by HFC in 1953 when he was hired as an outside collector. Over the years he received regular salary increases and promotions. When Mundy's employment was terminated in 1986, he had been an Area Manager since 1974, and was responsible for supervising the operations of HFC branches in his area.

On June 20, 1986, HFC discovered that the branch manager of the Hawthorne, California office had been manipulating payments and diverting funds for his personal use. Because of the seriousness of the situation, HFC decided to terminate some of the supervisory employees responsible

for the Hawthorne branch for failing to uncover the defalcation earlier. Mundy was among those terminated. He claims that the Hawthorne situation was a mere pretext for dismissal and that his termination was in fact motivated by age discrimination and contrary to HFC's express written policies providing for notice before discharge.

## DISCUSSION

### A. *Implied Covenant of Good Faith and Fair Dealing*

Mundy claims that by terminating his employment HFC breached the implied covenant of good faith and fair dealing under California law. His employment was governed by a written contract which provides that its terms are to be governed by Illinois law. Generally, California courts respect choice of law provisions in a contract unless doing so would violate a strong public policy. *Hall v. Superior Court*, 150 Cal. App.3d 411, 417, 197 Cal.Rptr. 757 (1983). Mundy argues that breach of the implied covenant is a tort, not a contract claim, and that therefore, California law governs. The choice between California and Illinois law is not critical to this case, however, as the outcome will be the same under either state's law.

California law implies a covenant of good faith and fair dealing in every contract. *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 362, 686 P.2d 1158, 1166 (1984). The implied covenant imposes certain obligations on contracting parties as a matter of law—specifically, that they will discharge their contractual obligations fairly and in good faith. *Koehrer v. Superior*

*Court*, 181 Cal.App.3d 1155, 1169, 226 Cal. Rptr. 820, 828 (1986).

The California appeals courts have permitted a tort action for breach of the implied covenant in employment termination cases. *E.g. Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980). However, the California Supreme Court recently disapproved this line of cases in *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988), holding that the relief available for breach of the implied covenant is limited to traditional contractual remedies.[1] *Id.* at 236, 765 P.2d at 398. The decision in *Foley* is fully retroactive to all cases not yet final on January 30, 1989, the date that decision became final, and thus, it is controlling here. *Newman v. Emerson Radio Corp.*, 48 Cal.3d 973, 258 Cal.Rptr. 592, 772 P.2d 1059 (1989).

After *Foley*, a plaintiff may still seek contract damages for breach of the implied covenant. Establishing such a breach of the implied covenant depends upon "the nature and purposes of the underlying contract and the legitimate expectations of the parties arising from the contract." *Koehrer*, 181 Cal.App.3d at 1169, 226 Cal.Rptr. at 828. An employer does not violate the implied covenant to act fairly and in good faith merely by terminating an employee, unless the discharge itself violates the terms of their agreement. Since "continuous employment is not a 'benefit of the agreement' where the employment relationship is strictly at will," *Hejmadi v. AM-FAC, Inc.*, 202 Cal.App.3d 525, 249 Cal. Rptr. 5, 17 (1988), termination of an at will employee will not generally give rise to an action for breach of the implied covenant.[2]

1. Mundy relies upon our recent decision in *Huber v. Standard Ins. Co.*, 841 F.2d 980 (9th Cir. 1988), in asserting his claim for tortious breach of the implied covenant of good faith and fair dealing. When *Huber* was before this court, it was unclear what the elements of a claim for tortious breach were under California law. After examining a number of state court of appeals cases, we reversed the grant of summary judgment and allowed the discharged employee in *Huber* to proceed with his claim for tortious breach of the implied covenant based upon our interpretation of California law. Since then, the

California Supreme Court has spoken decisively, holding in *Foley* that an allegation of breach of the implied covenant is a purely contractual claim. Because we are bound by an interpretation of state law by the highest state court, *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir.1983), our discussion of the covenant of good faith and fair dealing in *Huber* no longer has validity.

2. However, an employer's right to terminate an at will employee is not entirely unlimited. California courts recognize a tort action for wrong-

*See also Malmstrom v. Kaiser Aluminum and Chem. Corp.,* 187 Cal.App.3d 299, 320, 231 Cal.Rptr. 820, 831 (1986).

Illinois courts have interpreted allegations of breach of the duty of good faith and fair dealing as contract claims. The court in *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982), refused to recognize a tort remedy for an employer's allegedly bad faith discharge of an employee. Under Illinois law, the duty of good faith and fair dealing does not even create an independent cause of action and "certainly cannot be interpreted to limit the right to terminate an at-will employment contract." *Powers v. Delnor Hospital,* 135 Ill.App.3d 317, 90 Ill.Dec. 168, 481 N.E.2d 968 (1985).

Mundy's employment was governed by a written agreement signed in 1959 which provides that "employment hereunder may be terminated at will by either party without advance notice" and that it is an integrated agreement which can be modified only by a writing signed by both parties. Under the terms of this contract, his employment was clearly at-will and he could not have had any reasonable expectation of continued employment subject only to discharge for good cause.

It is conceivable that the 1959 written agreement could have been modified or terminated during Mundy's long tenure with HFC. However, Mundy offers no evidence that such a change in the expectations of the parties ever occurred. He does not allege any oral or written agreements purporting to supercede the 1959 agreement or to limit HFC's right to terminate his employment for any reason whatsoever. In the absence of an express or implied understanding that HFC would not terminate Mundy without cause, his allegations of "improper employer motivations" for his dismissal are irrelevant.

HFC had promulgated written personnel policies requiring supervisors to inform employees when their performance was unsatisfactory; however, Mundy does not allege

facts sufficient to conclude that these policies became a part of his employment contract. The policies on which he relies are contained in a document entitled "General Instructions for Completing Performance Appraisals" containing guidelines for HFC managers in conducting employee evaluations. One of the stated purposes of the policies is "achieving corporate goals and objectives" by assisting individual employees in identifying and improving problems areas in their performance. There is no indication that they were intended to override existing employment agreements or to create any new rights in the employees.

■ Viewing all of the facts in the light most favorable to Mundy, we conclude that continuing employment was not a benefit of his agreement with HFC, and that Mundy has failed to raise any genuine issue of breach of the implied covenant of good faith and fair dealing.

**B. *Age Discrimination***

■ In order to make out a claim of age discrimination under the ADEA and FEHA on a disparate treatment theory, Mundy must prove that age was a "determining factor in the discharge." *Kelly v. American Standard, Inc.,* 640 F.2d 974, 984 (1981). He can establish a prima facie case of age discrimination by showing that he was (1) over 40 years of age (2) qualified for his position (3) discharged and (4) replaced by a substantially younger employee with equal or inferior qualifications. *Kelly,* 640 F.2d at 980.

Once a plaintiff has established a prima facie case, the burden shifts to the employer to rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for the discharge. *Cotton v. City of Alameda,* 812 F.2d 1245, 1248 (1987). The plaintiff then must come forward with evidence that the employer's reason is mere pretext, concealing its discriminatory motive. *Id.*

ful discharge when the termination violates public policy, even though the employment relationship is at will. *E.g., Tameny v. Atlantic Rich-* *field Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). Mundy does not allege that his discharge violates public policy.

■ HFC contends that Mundy did not even establish a prima facie case of age discrimination because he failed to prove that he was performing his job satisfactorily and that his replacement, Metzger, was not more qualified than himself. While Mundy's employment records reflect some dissatisfaction with his work, it is disputable whether his overall performance was unsatisfactory. Assuming, arguendo, that Mundy has made out a prima facie case, HFC put forth a legitimate reason for his discharge: his failure to discover the defalcation at Hawthorne.

In order to avoid summary judgment Mundy need not prove that HFC's articulated reasons for his discharge are pretextual. However, he must "tender a genuine issue of material fact as to pretext." *Cotton*, 812 F.2d at 1284, quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983).

Mundy asserts that he was treated differently than the other employees responsible for the Hawthorne situation and that this fact raises an inference of pretext. Five HFC employees—Ronald Maples, Charles Limmer, Andrew Knowlton, Nicholas Falcone and Mundy—had supervisory responsibility for the Hawthorne branch. After the defalcation was discovered Knowlton, Maples and Mundy were discharged and Limmer and Falcone retained.

Knowlton was 35 when he was discharged, and Maples was 46. Mundy claims that they had violated other company policies and that the Hawthorne situation was not the real reason for their dismissal. He argues that the Hawthorne situation was also a pretext for termination in his case. While Falcone, aged 29, was not terminated, any reasonable inference of age discrimination is undercut by the fact that Limmer, who was *older* than Mundy and "equally as guilty" was retained. Whatever HFC's reasons for treating Mundy and Limmer differently, it is difficult to imagine that age could have been a "determining factor" in the decision to discharge Mundy.

Mundy also asserts that his discharge was part of a general "housecleaning" of older HFC employees, citing the dismissal of a half dozen senior management or executive employees over the age of 40 between January 1984 and August 1986. In a large corporation with branch offices throughout the country, the discharge of seven older employees over a two and a half year period alone does not establish a pattern or practice of discrimination. Mundy offers no evidence that these terminations were without good cause, or that age was a determining factor in any of them. The fact that other older employees of HFC were discharged is simply not probative of HFC's motives for terminating Mundy.

Similarly, the other evidence Mundy relies on is not probative of the issue of pretext. While the underlying facts on which his argument rests are mostly undisputed, the inferences he draws from them are unjustified. The circumstances of termination alleged by Mundy fail to raise any genuine issue of pretext. The district court properly granted HFC's summary judgment motion on the age discrimination claims.

## C. *Evidence of Release Agreement*

In connection with his age discrimination claims, Mundy offered evidence that HFC sought a release of claims from Mundy in exchange for $25,000. The district court refused to consider evidence of the proffered release agreement, holding that it was inadmissible under FRE 408 as evidence of a settlement agreement.

In *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir.1987), we held that FRE 408 only applies to settlement offers made after termination, where the employee has asserted that he or she is the victim of illegal discrimination. *Id.* at 1342. Severance pay packages contingent upon a release of claims which are offered contemporaneously with the notice of termination are *not* covered by the rule and are admissible evidence on the issue of discrimination. *Id.*

■ In this case, HFC offered payment of money for "outplacement services" three weeks after Mundy's termination.

He had already received three months severance pay in addition to several other benefits upon his discharge. Although Mundy had not yet filed any claims, he had retained legal counsel at the time the offer was made. Whether the release agreement at issue here more closely resembles a post-termination settlement offer or a contemporaneous severance pay package is a question properly resolved by an examination of the facts. We cannot say that the district court abused its discretion in finding it was a settlement offer, inadmissible under FRE 408.

■ Even if excluding evidence of the release agreement was an abuse of discretion, Mundy did not suffer any prejudice because of the district court's decision. The mere offer of money in exchange for a release of all claims does not by itself raise an inference that HFC's articulated reasons for discharging Mundy are pretextual. Viewing all of the facts, including evidence of the release agreement, in the light most favorable to Mundy, no genuine issue has been raised as to pretext and the grant of summary judgment is still appropriate.

AFFIRMED.

REINHARDT, Circuit Judge:
I concur in the result.