**Max HUBER, Plaintiff–Appellant,**

v.

**STANDARD INSURANCE COMPANY, Defendant–Appellee.**

No. 86–5620.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1987.

Decided March 11, 1988.

Matthew B.F. Biren, Los Angeles, Cal., for plaintiff-appellant.

Jan E. Eakins, Los Angeles, Cal., for defendant-appellee.

Before PREGERSON and NORRIS, Circuit Judges, and BURNS,* District Judge.

PREGERSON, Circuit Judge:

Max Huber ("Huber") filed a complaint in state court against his former employer, Standard Insurance Company ("Standard"), seeking compensatory and punitive damages for (1) wrongful discharge, (2) breach of the covenant of good faith and fair dealing, (3) intentional infliction of emotional distress, and (4) breach of contract concerning payment of commissions. The action was removed to federal court on the basis of diversity jurisdiction. After discovery was completed, Standard filed a motion for summary judgment. The district court granted partial summary judgment dismissing the first three causes of action and striking the claim for punitive damages. The parties subsequently settled the fourth cause of action. Huber appeals the grant of summary judgment as to the second and third causes of action and as to the striking of the claim for punitive damages.

We reverse the district court's grant of summary judgment as to the second and third causes of action and as to striking the claim for punitive damages.

## BACKGROUND

Huber and Standard entered into a written employment contract effective on November 20, 1973. According to this contract, Huber was employed by Standard as agency manager of Standard's Los Angeles

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

agency. Huber was forced, at the threat of termination, to agree to an amended version of this contract effective April 16, 1981. The amended contract states that "either you [Huber] or Standard may terminate this Contract by sending thirty days written notice to that effect to the other at his last known address." Huber was terminated on July 22, 1982, effective August 21, 1982.

Uncontested statements made in Huber's affidavit show that Standard never informed Huber of any dissatisfaction with his performance before the day of his termination. The letter terminating Huber's employment listed as the reasons for termination (1) Huber's negative attitude and criticism of Standard's new products, which adversely affected the Los Angeles agency, (2) the Los Angeles agency's increasing expense ratio, and (3) the Los Angeles agency's unsuccessful recruiting.

Huber's affidavit opposing summary judgment contradicts the assertion that he was critical of the new products and that the Los Angeles agency had been adversely affected. Huber's affidavit states that he did not express unhappiness about the new products and actually encouraged the members of his agency concerning them. Furthermore, as stated in the affidavit, Huber's alleged critical attitude concerning the new products could not have adversely affected performance during Huber's tenure because the new products were released in the Los Angeles area only five days before Huber was informed of his termination. Huber's affidavit also states that the Los Angeles agency ranked second in performance among all of the Standard agencies for the six months ending June 30, 1982, the period immediately preceding Huber's termination on July 22. This fact was publicized in a Standard publication.

Huber's affidavit opposing summary judgment shows that the factors negatively affecting the expense ratio during 1982 were not within Huber's control, but rather were in the control of his superiors. Huber's affidavit lists as examples a decision by his superiors in 1982 to increase office space thereby doubling the rent, against Huber's recommendation, and a decision by his superiors in 1981 to decrease the commission rate on first year commissions to be paid to agents. Furthermore, Huber's affidavit states that his agency operated within the budgetary limitations set by his superiors.

Huber's affidavit shows that his recruiting was successful. Huber's affidavit states that during his tenure as agency manager for the Los Angeles agency, he had a net increase of agents under contract of 1100%, and that the company as a whole had a substantial decrease over the same period.

All three of Huber's superiors whose names appear on his termination letter, Canfield, Halverson, and Johnson, have admitted in deposition testimony that they had not considered terminating Huber until June 1982. Two of them, Canfield and Johnson, testified that Huber's termination had not been considered until July 1982, the month Huber was terminated.

In 1981 Huber was informed that Johnson, who was then Canfield's immediate superior, wished to terminate Canfield, who was Huber's immediate superior. When Johnson asked Huber to evaluate Canfield, Huber decided to put his comments about Canfield in writing and to send copies of the evaluation to other Standard officers. Huber contends in his affidavit that his letter positively evaluating Canfield made it impossible to terminate Canfield. Instead, Johnson had Canfield moved to another position. Huber also contends in his affidavit that as a result of these events leading to Canfield's transfer on January 1, 1982, Johnson sought in 1982 to retaliate and terminate Huber.

According to Huber's affidavit, Standard has a practice of allowing terminated agency managers to continue as agents until their pensions vest. Huber, who was 50 at the time of his termination, requested such a demotion when he was informed of his termination as agency manager. His superiors did not grant this request. In addition, Huber was informed of his termination on a Thursday and was asked to

vacate his office before the following Monday.

## STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. Our determination is governed by the standard found in Fed.R. Civ.P. 56(c) governing summary judgment in the trial court. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). We must view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact and whether the district court properly applied the substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir. 1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. The Covenant of Good Faith and Fair Dealing

#### a. Elements of the Tort

In order to review the district court's grant of summary judgment against Huber's claim that Standard committed a tort by breaching the implied covenant of good faith and fair dealing, we must decide what the elements of such a tort are in the context of an employment contract under California law.

The California Supreme Court has recognized that "in California, the law implies in *every* contract a covenant of good faith and fair dealing," but has also stated that "the proposition that ... breach of the covenant always gives rise to an action in tort ... is not so clear." *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 768, 686 P.2d 1158, 1166, 206 Cal.Rptr. 354, 362 (1984) (emphasis in original). The California Supreme Court stated that a breach of the implied covenant in the context of an employment contract "might" give rise to a tort action, 36 Cal.3d at 769 n. 6, 686 P.2d at 1166 n. 6, 206 Cal.Rptr. at 362 n. 6, but has given no more guidance than that.

Because the California Supreme Court has not directly addressed the issue, we look to decisions of the California courts of appeal for guidance. *Miller v. Fairchild Indus.,* 797 F.2d 727, 735 (9th Cir.1986). The courts of appeal are divided as to what are the elements of the tortious breach of the implied covenant of good faith and fair dealing in employment contracts that, like the one in the instant case, contain no fixed term of employment.

One line of court of appeal opinions holds fast to the language of *Cleary v. American Airlines,* 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980). In *Cleary,* the court stated that

> [t]wo factors are of paramount importance in reaching our result that plaintiff has pleaded a viable cause of action. One is the longevity of service by plaintiff....
>
> The second factor of considerable significance is the expressed policy of the employer.... [I]ts existence compels the conclusion that this employer had recognized its responsibility to engage in good faith and fair dealing rather than in arbitrary conduct with respect to *all* of its employees.... [These factors preclude] any discharge of such an employee by the employer without good cause.

111 Cal.App.3d at 455–56, 168 Cal.Rptr. at 729. One case has turned this statement into a rigid two-pronged requirement for the availability of a tort action for violation of the implied covenant in the context of an employment contract containing no term of employment. *See Foley v. Interactive Data Corp.,* 193 Cal.App.3d 28, 36, 219 Cal.Rptr. 866, 871 (1985), *rev. granted,* 222 Cal.Rptr. 740, 712 P.2d 891 (1986); *see also Newfield v. Insurance Co.,* 156 Cal.App.3d 440, 445–46, 203 Cal.Rptr. 9, 12 (1984) (Holdings of violation of the covenant "were *always* predicated upon other public policy grounds, statutory violations, or express (or clearly implied) contract grounds, or upon a combination of elements (e.g. especially longevity of service together with some added element (*Cleary*) 18

years and company policies....)" (emphasis in original)); *Gianaculas v. Trans World Airlines*, 761 F.2d 1391, 1394–95 (9th Cir.1985) (discussing *Cleary* but holding that because there was good cause for termination there could be no breach of the implied covenant).[1]

■ The other line of court of appeal cases has held that the factors discussed in *Cleary* do not define the tort in the case of an employment contract containing no term of employment. For instance, in *Khanna v. Microdata Corp.*, 170 Cal.App.3d 250, 215 Cal.Rptr. 860 (1985), the court scrutinized the generally applicable covenant described in *Seaman's* and concluded that

> a breach of the implied covenant of good faith and fair dealing in employment contracts is established whenever the employer engages in "bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights." The facts in *Cleary* establish only one manner among many by which an employer might violate this covenant.

170 Cal.App.3d at 262, 215 Cal.Rptr. at 867 (citations omitted) (quoting *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 478–79, 199 Cal.Rptr. 613, 619 (1984)). The holding in *Khanna* was recast in *Koehrer v. Superior Court*, 181 Cal.App.3d 1155, 226 Cal.Rptr. 820 (1986) (involving an employment contract with a one-year term) as follows:

> If ... the existence of good cause for discharge is asserted by the employer without probable cause and in bad faith, that is, without a good faith belief that good cause for discharge in fact exists, the employer has tortiously attempted to deprive the employee of the benefits of the agreement, and an action for breach of the implied covenant of good faith and fair dealing will lie.

181 Cal.App.3d at 1171, 226 Cal.Rptr. at 829. One other court of appeal opinion has adopted this more general approach inspired by *Seaman's* and described in *Khanna* and *Koehrer*. *See Gray v. Superior Court*, 181 Cal.App.3d 813, 821, 226 Cal.Rptr. 570, 573–74 (1986). Other cases have indicated that the tort does not require both factors discussed in *Cleary*. *See Rulon–Miller v. International Business Machs. Corp.*, 162 Cal.App.3d 241, 252–53, 208 Cal.Rptr. 524, 532–33 (1984); *Shapiro*, 152 Cal.App.3d at 478, 199 Cal.Rptr. at 619 (1984); *Crosier v. United Parcel Serv. Inc.*, 150 Cal.App.3d 1132, 1137, 198 Cal.Rptr. 361, 364 (1983).

To determine whether summary judgment for Standard with respect to the breach of the covenant was proper, we must adopt one of the two approaches taken by the courts of appeal.

The *Foley* approach, which requires longevity and an express policy not to terminate arbitrarily to establish breach of the covenant, does not square with the precedent. *Cleary*, the supposed source of this approach, does not present longevity and express policy as prerequisites. *Cleary* says only that these two considerations are "factors ... of paramount importance in reaching our result," "factor[s] ... of considerable significance." 111 Cal.App.3d at 455, 168 Cal.Rptr. at 729. Indeed, the only case that clearly establishes these two factors as prerequisites is *Foley*. 193 Cal.App.3d at 36, 219 Cal.Rptr. at 871.

The *Khanna/Koehrer* approach is more compelling because it does not treat the implied covenant of good faith and fair dealing in employment contracts as a distinct area of the law. Instead, this approach treats the implied covenant in employment contracts as a species of the implied covenant of good faith and fair dealing that is, according to the California Supreme Court, implied in every contract.

---

1. At least one court has held that there can be no breach of the covenant of good gaith and fair dealing when a written contract provides for termination at any time. *See Malmstrom v. Kaiser Aluminum & Chemical Corp.*, 187 Cal.App.3d 299, 320, 231 Cal.Rptr. 820, 831 (1986). This case, however, in so holding, confuses breach of the implied covenant of good faith and fair dealing with breach of an implied in fact promise, and in fact cites to the part of *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 199 Cal.Rptr. 613 (1984), discussing the implied in fact promise and applies it to the implied covenant.

*Seaman's,* 36 Cal.3d at 768, 686 P.2d at 1166, 206 Cal.Rptr. at 362. In general, the implied covenant "requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* Although *Seaman's* stated that it was not necessary in that case to "predicate liability on a breach of the implied covenant," the opinion went on to state that "[i]t is sufficient to recognize that a party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." 36 Cal.3d at 769, 686 P.2d at 1167, 206 Cal.Rptr. at 363. According to *Koehrer,* this statement, despite the disclaimer, contributes to the definition of a general breach of the covenant. *Koehrer,* 181 Cal.App.3d at 1170, 226 Cal.Rptr. at 829. The elements of a breach of the covenant in the context of employment contracts described in *Khanna* and *Koehrer,* and quoted above, are more closely attuned to the statements by the California Supreme Court in *Seaman's* concerning the covenant generally. We therefore adopt them.

### b. Bad Faith Acts Extraneous to the Contract

*Khanna,* as stated above, predicates the tort upon "bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights." *Khanna,* 170 Cal.App.3d at 262, 215 Cal.Rptr. at 867. Standard argues that Huber failed to show "bad faith action extraneous to the contract."

Standard argues that the requirement of acts extraneous to the contract places upon Huber the burden of proving the existence of some hidden motivation that directly shows bad faith on the part of the employer. Proof that the employer did not have good cause to terminate the employee is, according to Standard, insufficient as a matter of law to establish a breach of the implied covenant. Standard has cited and we have found no authority requiring proof of a hidden motivation.

In *Cleary,* the court said the following with respect to the plaintiff's burden: "We recognize, of course, that plaintiff has the burden of proving that he was terminated unjustly, and that the employer, American Airlines, will have its opportunity to demonstrate that it did in fact exercise good faith and fair dealing with respect to plaintiff." 111 Cal.App.3d at 456, 168 Cal.Rptr. at 729. Thus, *Cleary* requires only a showing of unjust termination to establish a prima facie case. Under *Cleary,* the existence of good faith is an affirmative defense. Similarly, *Crosier,* which found the burden for breach of the covenant of good faith and fair dealing to be the same as that for an implied in fact covenant, stated that the burden "requires the employee to demonstrate a prima facie case of wrongful termination. The burden of coming forward with evidence as to the reason for . . . termination now shifts to the employer.'" 150 Cal.App.3d at 1137–38, 198 Cal.Rptr. at 364 (quoting *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 330, 171 Cal.Rptr. 917, 927 (1981)).

In *Khanna,* the court accepted proof resembling the proof offered in the instant case as sufficient to sustain a jury verdict. The court stated that although evidence discrediting the stated reasons for plaintiff's termination "did not compel a finding that . . . [the employer] acted in bad faith, it did provide a substantial basis for the jury to infer bad faith." 170 Cal.App.3d at 263–64, 215 Cal.Rptr. at 868. The finder of fact may infer bad faith from evidence that the employer's dissatisfaction with the employee was unfounded, and thus the employee need not directly prove the existence of a hidden motive.

█ In the present case, Huber has presented affidavits establishing genuine issues of material fact as to his claim of wrongful discharge. Standard stated in the termination letter that Huber was discharged for the effect that his negative attitude about the new products had on the Los Angeles agency's performance. Yet there is undisputed evidence that the Los Angeles agency performed well, and that in any event Huber was terminated only five

days after the new products were released in the Los Angeles area. Standard stated in the termination letter that Huber was discharged because of the Los Angeles agency's increasing expense ratio. Yet there is undisputed evidence that the expense ratio was adversely affected by factors beyond Huber's control, and that the agency stayed within budget guidelines. Finally, Standard stated in the termination letter that Huber was discharged because of unsuccessful recruiting. Yet there was undisputed evidence that recruiting in the Los Angeles agency was more successful than recruiting in Standard as a whole.

Because Huber presented affidavit evidence reciting easily verifiable facts contradicting each of Standard's stated reasons for termination, Huber has raised genuine issues of material fact as to wrongful discharge, and thus has raised genuine issues of material fact as to the existence of a prima facie case of breach of the covenant of good faith and fair dealing.

## II. Intentional Infliction of Emotional Distress

For an action in intentional infliction of emotional distress to lie, the defendant must engage in outrageous conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 210, 649 P.2d 894, 901, 185 Cal. Rptr. 252, 259 (1982). Standard argues that Huber has not shown that there was outrageous conduct sufficient to give rise to the tort of intentional infliction of emotional distress. Standard has not shown, however, that the conduct in the instant case does not constitute outrageous conduct as a matter of law.

In *Rulon–Miller v. International Business Machines Corp.*, 162 Cal.App.3d 241, 208 Cal.Rptr. 524 (1984), an employee was told by her superior, in disregard of IBM's policies, that she would have to choose between her employment and her romantic relationship with a competitor's employee. Although she was told that she had a couple of days to make her decision, her supe-

rior called her in the next day and told her that he had made up her mind for her and that she would end the relationship. When the employee refused she was fired. The court stated that the superior's conduct was sufficiently outrageous to constitute intentional infliction of emotional distress because the "combination of statements and conduct would under any reasoned view tend to humiliate and degrade [the employee]." 162 Cal.App.3d at 256, 208 Cal.Rptr. at 534.

In *Wallis v. Superior Court*, 160 Cal. App.3d 1109, 207 Cal.Rptr. 123 (1984), a fifty-five-year-old employee who had been laid off brought suit against his former employer who had agreed to pay him a monthly sum for ten years in exchange for a promise not to compete. The court held that the employer's termination of payments could give rise to an action for breach of the implied covenant of good faith and fair dealing and an action for intentional infliction of emotional distress. *Wallis* cites *Newby v. Alto Riviera Apartments*, 60 Cal.App.3d 288, 131 Cal.Rptr. 547 (1976) (unrelated holding superseded by statute as noted in *Western Land Office, Inc. v. Cervantes*, 175 Cal.App.3d 724, 739, 220 Cal.Rptr. 784, 795 (1985)) for the following definition of outrageous conduct for the purpose of establishing intentional infliction of emotional distress:

> Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

*Wallis*, 160 Cal.App.3d at 1120, 207 Cal. Rptr. at 130. In *Wallis*, the court held that allegations of financial control of the employer and a recognition of the employee's vulnerability were sufficient under this standard to constitute outrageous conduct. 160 Cal.App.3d at 1120, 207 Cal.Rptr. at 130.

In the present case there is undisputed evidence that Huber, who was an

agency manager for Standard for approximately 8 years, was terminated without ever having been warned that his conduct was unsatisfactory. Furthermore, the purported reasons for Huber's termination were memorialized in a letter, leaving a record for potential future employers. It is also undisputed that Huber, at the age of fifty, was not allowed to stay on as an employee until his pension would vest, even though there is evidence that the standard procedure for terminated agency managers was to allow them to stay on. Finally, although Huber's termination was effective thirty days from notice of termination, it is undisputed that he was asked to vacate his office in one work day.

This evidence tends to show that the way in which Standard allegedly wrongfully terminated Huber would humiliate and degrade him. Furthermore, the evidence that there was a letter memorializing for potential employers the purported reasons for termination and that Standard would not allow Huber to stay on in an inferior capacity in order for his pension to vest tends to show that Standard abused its position of power to damage Huber's interests. Therefore, this evidence raises genuine issues of material fact as to intentional infliction of emotional distress.

III. Punitive Damages

To be entitled to punitive damages for the commission of a tort, the tortfeasor "must be guilty of oppression, fraud, or malice." Cal.Civ.Code § 3294. The tortfeasor must "act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights." *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 462, 521 P.2d 1103, 1110, 113 Cal.Rptr. 711, 718 (1974) (covenant of good faith and fair dealing in insurance context); *see Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 820–23, 620 P.2d 141, 146–47, 169 Cal.Rptr. 691, 696–97 (1979), *cert. denied,* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). California courts have upheld punitive damages awards for violations of the covenant of good faith and fair dealing in the context of employment. *See Rulon-Miller v. International Business Machs. Corp.,* 162

Cal.App.3d 241, 255, 208 Cal.Rptr. 524, 535 (1984); *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 457, 168 Cal.Rptr. 722, 730 (1980).

The plaintiff need not directly prove malice on the part of the defendant to be entitled to punitive damages. Malice may be proved " 'either expressly (by direct evidence probative on the existence of hatred or ill will) or by implication (by indirect evidence from which the jury may draw inferences).' " *Neal v. Farmers Ins. Exchange,* 21 Cal.3d 910, 923 n. 6, 582 P.2d 980, 987 n. 6, 148 Cal.Rptr. 389, 396 n. 6 (1978) (quoting *Bertero v. National General Corp.,* 13 Cal.3d 43, 67, 529 P.2d 608, 625, 118 Cal.Rptr. 184, 201 (1974)); *see Monge v. Superior Court,* 176 Cal.App.3d 503, 511, 222 Cal.Rptr. 64, 68 (1986).

Huber has presented indirect evidence of malice. Evidence that Standard terminated Huber without cause and without warning, memorialized in a letter damaging pretextual reasons for discharge, refused to allow Huber's pension to vest, requested Huber's immediate removal from his office, combined with evidence that retaliation was the motive for termination, raise genuine issues of material fact as to whether punitive damages are proper in the instant case.

### CONCLUSION

We hold that Huber has presented sufficient evidence to establish genuine issues of material fact as to breach of the implied covenant of good faith and fair dealing, the intentional infliction of emotional distress, and the availability of punitive damages. Accordingly, we reverse the district court's order granting Standard's motion for summary judgment.

**REVERSED and REMANDED.**