Robbyn CALHOUN, Plaintiff,

v.

LIBERTY NORTHWEST INSURANCE CORPORATION, Defendant.

Robbyn CALHOUN, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE CORPORATION, Defendant.

No. C91–357R.

United States District Court, W.D. Washington at Seattle.

Jan. 6, 1992.

Michael Holland, Seattle, Wash., for plaintiff.

David John Riewald, Jonathan T. Harnish, Corbett Gordon, Portland, Or., for defendants.

ORDER GRANTING DEFENDANTS' MO-
TION FOR SUMMARY JUDGMENT
AND DISPOSING OF OTHER PEND-
ING MOTIONS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on defendants' motions for summary judg-

ment of dismissal and for sanctions and on plaintiff's motions to strike defendants' motion for summary judgment, for reconsideration of this court's November 26, 1991, Order granting Defendants' Motion to Compel and Awarding Costs, and for sanctions. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully informed, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

Defendants Liberty Northwest Insurance Corp. ("Liberty Northwest") and Liberty Mutual Insurance Corp. ("Liberty Mutual") employed plaintiff Robbyn Calhoun from March 7, 1978, until her discharge on November 18, 1987. Ms. Calhoun was hired as a claims representative by Liberty Mutual on March 7, 1978. In 1983, Liberty Northwest was incorporated, and in January 1985, Liberty Mutual transferred all of its operations in the Seattle area to Liberty Northwest. At that time, all Liberty Mutual employees, including plaintiff, became employees of Liberty Northwest. Affidavit of Maggie Haines, ¶ 3.

Plaintiff, an African American, suffered back and neck injuries in an automobile accident in November 1985 and began a long-term disability leave from her employment with Liberty Northwest. After being cleared to return to work by her doctor, plaintiff returned to Liberty Northwest in a claims representative position in January 1986. However, after complaining of severe headaches she began a second long-term disability leave on March 4, 1986. Plaintiff again was cleared by her doctor to return to work in March 1987. At that time, however, there were no claims representative openings in the Seattle office. Plaintiff was assigned to a file clerk position in the sales department, receiving the same level of pay she did as a claims representative. Plaintiff was dismissed eight months later for, according to defendants, inadequate job performance. *See* Defendants' Memorandum in Support of Motion for Summary Judgment, at 4.

On December 22, 1987, plaintiff filed a complaint with the Washington State Human Rights Commission ("WSHRC"), alleging that she was discharged based on her race, handicap and marital status (single mother). After an investigation into plaintiff's charges, the WSHRC concluded that there was no evidence of discrimination against Ms. Calhoun. Defendants' Memorandum in Support of Motion for Summary Judgment, Exhibit D.

On November 16, 1990, plaintiff filed separate suits in King County Superior Court against each defendant, alleging claims based on: (1) race and handicap discrimination in violation of RCW 49.60; (2) retaliation for opposing discrimination in violation of RCW 49.60; and (3) negligent infliction of emotional distress.[1] Defendants removed both actions to federal court, and this court consolidated the cases under this cause number.

The parties have encountered considerable discovery problems in this matter. This court twice has extended the discovery deadline to permit defendants to pursue additional discovery and twice has granted defendants' motions to compel and to award costs for bringing the motions.[2]

Alleging that plaintiff cannot establish the prima facie elements of any of her claims and that plaintiff cannot establish that defendants' asserted reason for firing Ms. Calhoun, inadequate performance, was mere pretext, defendants now move for summary judgment of dismissal of all claims against them. Defendants also move for sanctions for plaintiff's failure to adequately answer defendants' third set of interrogatories and for plaintiff's failure to appear on the date scheduled to complete her deposition. Plaintiff moves for reconsideration of that part of this court's November 26, 1991, order directing plaintiff to

---

1. Plaintiff's original complaints also included claims based on wrongful termination and intentional infliction of emotional distress. These claims were dismissed by prior order of this court.

2. The court denied a third motion by defendants to extend the discovery deadline for limited purposes. Order Denying Partial Extension of Discovery Deadline, December 19, 1991.

pay $500 in costs for defendants' motion to compel. Plaintiff also moves to strike defendants' motion for summary judgment and for sanctions based on what plaintiff alleges are violations of Fed.R.Civ.P. 11 by defendants in bringing their motion for summary judgment.

## II. DISCUSSION

### A. *Plaintiff's Motion to Strike and For Sanctions*

Plaintiff moves to strike defendants' motion for summary judgment and seeks sanctions against defendants for bringing a motion that could not have been signed by counsel in the good faith belief that the motion had a reasonable basis in fact as required by Fed.R.Civ.P. 11. Plaintiff argues that defendants' motion for summary judgment was brought for an improper purpose—to inundate the court and plaintiff with numerous pleadings, causing delay and unnecessarily increasing the cost of litigation. Plaintiff also argues that defendants miscite several cases in their memorandum in support of their motion for summary judgment. In addition, plaintiff argues that the affidavits submitted in support of defendants' motion for summary judgment could not express each affiant's individual views because of the similarity of some of the paragraphs in several of the affidavits. Plaintiff concludes that the court must strike the motion and impose sanctions in the form of attorneys' fees, costs and special damages.

Plaintiff's arguments are without merit. Defendants have neither inundated the court with frivolous motions nor miscited the law applicable to this motion. In the course of this matter, defendants have filed three substantive motions, four discovery-related motions and a motion to strike plaintiff's late-filed response to their motion for summary judgment. With the exception of the motion to strike and the third motion to extend the discovery deadline, the court granted some or all of defendants' requested relief.

Plaintiff's allegation that defendants repeatedly miscite cases in their motion for summary judgment focuses on cases cited by defendants as setting out the applicable standards of review and elements of a prima facie handicap, retaliation or race discrimination case under Washington law. As is discussed in more detail below, the court determines that defendants citation to the relevant case law is in accord with this court's reading of those cases and is well within the boundaries of Fed.R.Civ.P. 11.

Plaintiff also argues that defendants failed to cite contrary authority, particularly *Huber v. Standard Insurance Co.*, 841 F.2d 980 (9th Cir.1988), in arguing for summary judgment on plaintiff's negligent infliction of emotional distress claim. *Huber*, however, involves a claim of intentional, not negligent, infliction of emotional distress. *Id.* at 986.

Finally, plaintiff's argument that the affidavits submitted in support of defendants' motion for summary judgment could not be based on the affiants' personal knowledge because of the similarity of some of the paragraphs is also without merit. As defendants explain, the affidavits were prepared by defendants' counsel with information supplied by the affiants. The affidavits were then reviewed for accuracy and signed by each affiant. Such a practice is neither unusual nor improper.

Plaintiff's motions to strike defendants' motion for summary judgment and for sanctions will be denied.

### B. *Defendants' Motion for Summary Judgment*

In their motion for summary judgment, defendants seek dismissal of plaintiff's remaining four claims for relief: (1) employment discrimination based on plaintiff's race in violation of RCW 49.60; (2) employment discrimination based on the disability plaintiff sustained in her 1985 automobile accident in violation of RCW 49.60; (3) employment discrimination in the form of retaliation for plaintiff's complaints about unfair treatment in her file clerk position in violation of RCW 49.60; and (4) negligent infliction of emotional distress.

### 1. Standard of Review

■ A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–631 (9th Cir. 1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

To defeat a motion for summary judgment, a nonmoving party must comply with the requirements of Fed.R.Civ.P. 56(e), which provides that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

■ In two cases, the Supreme Court has clarified what the nonmoving party must do to withstand a motion for summary judgment. First, the Court noted that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact as to that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Second, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In addition to arguing that Liberty Mutual is not a proper defendant because it did not employ Ms. Calhoun at the time she was fired, defendants pose two challenges to each of plaintiff's claims and a third challenge to each of plaintiff's claims of employment discrimination. Defendants first argue that plaintiff has not set forth specific facts showing that there is a genuine issue for trial but instead has relied on subjective conclusions. Defendants also argue that plaintiff cannot, as a matter of law, establish the prima facie elements of each of her claims. Finally, defendants argue that as to each of plaintiff's claims of employment discrimination pursuant to RCW 49.60, defendants have set forth a legitimate, nondiscriminatory reason for Ms. Calhoun's termination and Ms. Calhoun has not set forth facts showing that defendants' legitimate reason was mere pretext for discrimination.

### 2. Plaintiff's Race Discrimination Claim

■ To state a claim for employment discrimination based on race under RCW 49.60, plaintiff must show that she: (1) was a member of a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone not in the protected class. *Jones v. Sanitary Landfill,* 60 Wash.App. 369, 371, 803 P.2d 841 (1991).

Defendants argue that plaintiff cannot establish two of these prima facie elements of her race discrimination claim because she cannot set forth specific facts showing either that she was doing satisfactory work or that she was replaced by someone not in the protected class. Defendants submit extensive affidavits from Ms. Calhoun's supervisor, Maggie Haines, and Ms. Haines' assistant, Cheryl Buckner, indicating that Ms. Calhoun was not current with her work, made numerous errors, was habitually tardy, and spent too much time at the office on personal phone calls and doing personal business. Affidavit of Maggie Haines at 4–7 and Exhibit A (letter from Maggie Haines to Robbyn Calhoun inform-

ing her that she was being discharged); Affidavit of Cheryl Buckner at 2–5. Defendants also state that Ms. Calhoun was replaced in her file clerk position by another African–American woman, Daphne Beverly. Affidavit of Maggie Haines, ¶ 6; Affidavit of Cheryl Buckner, ¶ 3.

In response, plaintiff argues that white co-workers were not penalized for either being tardy or for making personal phone calls during work time. Plaintiff also argues that for purposes of determining whether she was replaced by a member of a protected class, the proper point of reference is not who replaced her in her file clerk position, but who replaced her at her claims representative position. Plaintiff further argues that Kari Berg, a white female, was hired as a claims representative at the same time that plaintiff was assigned to the file clerk position.[3]

Plaintiff's arguments are insufficient to establish a genuine issue of material fact. Plaintiff puts forth absolutely no evidence showing that she was performing satisfactory work. Her only attempt to counter defendants' arguments is her subjective, conclusory, unsupported statement that when she complained that she was being unfairly treated her supervisors responded by keeping a record of her every move. Affidavit of Robbyn Calhoun, ¶ 9. The affidavits and exhibits submitted by defendants show that plaintiff's poor work record had begun within weeks of her transfer to the file clerk position, that plaintiff's supervisors repeatedly informed her that her work was unsatisfactory and that plaintiff's supervisors informed her that if her work performance did not improve, she could be discharged. Affidavit of Maggie Haines, Exhibit A. In light of the substantial evidence showing that plaintiff was discharged for her poor work performance, plaintiff's subjective belief

that she was discharged based on race is implausible. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In addition, even if the court were to look at who replaced Ms. Calhoun as a claims representative, plaintiff cannot show that she was not replaced by a member of a protected class. Kari Berg, the person who plaintiff claims replaced her, was hired in February of 1987, before defendant Liberty Northwest learned that plaintiff had been cleared to return to work. *See* Reply Affidavit of Gerald Hansen, ¶ 7 and Exhibits A and B. Therefore, plaintiff's claim that Ms. Berg, a white woman, was placed in her position, is also implausible.

Even if plaintiff was able to set forth evidence on each of the prima facie elements of her race discrimination claim, defendants have set forth ample evidence to show that they had a legitimate, nondiscriminatory reason to discharge plaintiff, her poor work record. Once defendants have set forth this legitimate, nondiscriminatory reason, plaintiff must set forth sufficient evidence to establish a genuine issue of material fact that defendants' legitimate reason was mere pretext for discrimination. *See Jones*, 60 Wash.App. at 371, 803 P.2d 841. Other than her suggestion that defendants began to document her every move after she complained of unfair treatment, plaintiff makes no argument that defendants' decision to discharge her for poor work performance was pretext for discrimination. Such unsupported claims are insufficient to establish specific facts on a motion for summary judgment.

Accordingly, defendants' motion for summary judgment on plaintiff's claim for employment discrimination based on race will be granted.

---

**3.** Plaintiff also spends considerable time making a clearly meritless argument that defendants have misrepresented the relevant burdens of production regarding discrimination claims. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 4–9. Plaintiff, however, apparently fails to appreciate her burden of setting forth specific facts in opposition to defendants' motion for summary judgment, and

refers instead to the nonmoving party's burden on a motion to dismiss for failure to state a claim. *Id.* at 5. Furthermore, defendants' representations regarding the relevant burdens of production on this motion for summary judgment and the prima facie elements on plaintiff's discrimination claims are in accord with this court's own reading of the case law.

### 3. Plaintiff's Handicap Discrimination Claim

 To state a claim for employment discrimination based on plaintiff's handicap, plaintiff must show that: (1) she is handicapped; (2) she had the qualifications to fill a vacant position; and (3) her employer failed to reasonably accommodate the handicap. *Reese v. Sears, Roebuck & Co.,* 107 Wash.2d 563, 579, 731 P.2d 497 (1987).[4] Whether plaintiff is handicapped is a factual question and ordinarily is to be resolved by the trier of fact. *Phillips v. City of Seattle,* 111 Wash.2d 903, 909, 766 P.2d 1099 (1989). However, to meet this initial prima facie requirement, plaintiff must still come forward with some evidence of a handicap and some evidence that the handicap was the reason for her discharge. *Simmerman v. U-Haul, Co.,* 57 Wash. App. 682, 789 P.2d 763 (1990).

 Defendants argue that plaintiff cannot produce evidence showing a genuine issue of material fact on any of these prima facie requirements. Defendants argue that plaintiff has set forth no evidence that she had a handicap at the time of her discharge, that any handicap was the reason for her discharge or that there was a vacant position for which she was qualified. Defendants also argue that they are not required to accommodate plaintiff by creating a position for her.

Plaintiff responds that defendants' own affidavits are replete with references to her disability, and that by failing to return her to the claims representative position for which she was qualified, defendants failed to accommodate her.

Plaintiff's arguments are again unpersuasive. Although it is undisputed that plaintiff twice had taken extended disability leave from her claims representative position, that same evidence indicates that plaintiff's doctor had cleared her to return to work. Ms. Calhoun has set forth no medical evidence that she suffered from a disability at the time of her discharge or that her doctor had set limits on the kind of work she could do upon her return. In fact, the only evidence plaintiff cites that she continued to suffer from any disability are her own subjective statements that she experienced back and neck pains from stooping and bending while doing her file clerk duties. Affidavit of Robbyn Calhoun, ¶ 9. Such subjective statements are insufficient to create a genuine issue of material fact that plaintiff had a handicap. *Simmerman,* 57 Wash.App. at 687, 789 P.2d 763.

In addition, even if plaintiff were able to establish that she had a handicap, she has set forth no plausible evidence that her handicap was the reason for her discharge. Defendants, on the other hand, have set forth the considerable evidence discussed above indicating that plaintiff was discharged because of her poor work performance.

Finally, plaintiff also has set forth no evidence that she was qualified for any vacant position so that defendants would have the obligation to accommodate her handicap. Defendants state that the only other vacant position from the time plaintiff returned to work in March 1987 to the time of her discharge in November was a sales representative position for which plaintiff was not qualified because she did not have the required license. Affidavit of Maggie Haines, ¶ 4; Affidavit of Gerald Hansen, ¶ 7. Defendants are under no obligation to create a claims representative position for plaintiff in order to accommodate her handicap. *See Clarke v. Shoreline School Dist.,* 106 Wash.2d 102, 720 P.2d 793 (1986).

### 4. Plaintiff's Retaliation Claim

 To state a claim for discrimination based on retaliation under RCW 49.60, plaintiff must set forth evidence showing that: (1) she engaged in a protected activity; (2) she suffered an adverse employ-

---

**4.** Plaintiff argues both in her motion to strike and in her opposition to defendants' motion for summary judgment that the elements of a prima facie handicap claim as set out in *Reese* have been overruled by *Phillips v. City of Seattle,* 111 Wash.2d 903, 766 P.2d 1099 (1989). *Phillips* is not so broad. It overrules *Reese* only to the extent that *Reese* held that whether a particular condition is a handicap is a question of law. *See Phillips,* 111 Wash.2d at 910, 766 P.2d 1099.

ment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Allison v. Housing Authority,* 59 Wash.App. 624, 626–27, 799 P.2d 1195 (1990).

■ In her original complaint, her first amended complaint and her second amended complaint, plaintiff states that she filed a complaint for discrimination with the WSHRC on December 16, 1987, and that this was the action for which defendants retaliated against her. As plaintiff was discharged on November 18, 1987, nearly a full month *before* she filed her complaint with the WSHRC, there is clearly no causal connection between any protected activity and plaintiff's termination. In opposition to defendants' motion for summary judgment, plaintiff argues that she told her supervisors prior to her discharge that she would be talking to an attorney and would be filing a discrimination complaint. Plaintiff further argues that this is the protected activity for which defendants discharged her.

The court will not permit plaintiff, in effect, to change her retaliation claim in an effort to defeat defendants' motion for summary judgment. *See Acri v. Int'l Ass'n of Machinists,* 781 F.2d 1393, 1398 (9th Cir.1986), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986). Accordingly, plaintiff has set forth no genuine issue of material fact that her discharge was in retaliation for engaging in protected activity.

### 5. Plaintiff's Negligent Infliction of Emotional Distress Claim

■ Under Washington law, a claim for negligent infliction of emotional distress must meet the traditional requirements of "duty, breach, proximate cause and damage or injury." *Hunsley v. Giard,* 87 Wash.2d 424, 434, 553 P.2d 1096 (1976).

■ Defendants argue that because there is no existing precedent for imposing liability against an employer for *negligent,* rather than intentional, infliction of emotional distress in discharging an employee, they owe no duty of care to plaintiff. Whether a defendant owes a duty of care

to plaintiff is a question of law. *DuVon v. Rockwell Int'l,* 116 Wash.2d 749, 753, 807 P.2d 876 (1991). Defendants further argue that imposing liability on employers in such a situation would be tantamount to giving every employee a cause of action against her employer upon discharge.

Plaintiff here argues that defendants deliberately misrepresent the case law because the Ninth Circuit has allowed actions for negligent infliction of emotional distress as set out in *Huber v. Standard Insurance Co.,* 841 F.2d 980 (9th Cir.1988).

It is plaintiff, however, who misunderstands *Huber. Huber* involved an action for intentional infliction of emotional distress where the manner in which plaintiff was discharged was alleged to be outrageous conduct. *Id.* at 986. Plaintiff cites no authority holding an employer liable for negligent infliction of emotional distress for discharging an employee, nor has plaintiff set forth any evidence regarding the manner in which she was discharged. The court is persuaded that there exists no cause of action for negligent infliction of emotional distress for what the evidence indicates is a routine discharge for poor work performance. Accordingly, summary judgment is appropriate as a matter of law on plaintiff's claim for negligent infliction of emotional distress.

### 6. Plaintiff's Claims Against Liberty Mutual

As the court will grant summary judgment of dismissal of all of plaintiff's remaining claims, it need not consider that part of defendants' motion for summary judgment seeking dismissal of all claims against defendant Liberty Mutual.

### C. *Defendants' Motion for Sanctions*

Defendants seek sanctions against plaintiff for plaintiff's failure to appear for the completion of her deposition on December 11, 1991, and for plaintiff's failure to provide adequate discovery responses as directed by this court in its November 26, 1991, order granting defendants' motion to

compel.[5] Defendants also ask the court to determine which party should pay for the cost of plaintiff's counsel's questioning of Dr. Richard Spaulding at defendants' deposition of Dr. Spaulding.

### 1. Plaintiff's Failure to Appear for Deposition

■ In its November 26 order, this court granted a short extension of the discovery deadline to permit defendants to, among other things, finish plaintiff's deposition. Defendants scheduled the conclusion of plaintiff's deposition for December 11, and notified plaintiff's counsel, via facsimile transmission, on December 6. Plaintiff's counsel did not contact his client until December 10 and discovered that she was unavailable the next day.

In its December 18 order denying a further extension of the discovery deadline, this court pointed out that defendants shared some of the responsibility for the delay in scheduling the completion of plaintiff's deposition and in notifying plaintiff of the date of the deposition. Order Denying Partial Extension of Discovery Deadline, December 19, 1991, at 3. Accordingly, the court will not award sanctions for plaintiff's failure to appear.

### 2. Incomplete Answers to Interrogatories

Defendants next argue that the answers provided by plaintiff in her answers to defendants' third set of interrogatories are incomplete. For example, Interrogatory No. 1 asked plaintiff to identify every statement made by anyone that plaintiff claims supports her race discrimination claim, as well as the name, address and telephone number of the person who made the statement and the time, place and circumstance in which the statement was made. Plaintiff's entire response was as follows:

1. Janice Cook made the Statement that plaintiff was being treated unfairly and we believe that she will testify that the unfair treatment was racially motivated.... Address unknown.

2. Other employees, if truthful, would admit same. They are listed in pretrial order.

*See* Defendants' Motion for Sanctions, Exhibit D at 3. In response to defendants' other interrogatories, seeking similar information about plaintiff's other discrimination claims, plaintiff simply referred to her answer to Interrogatory No. 1. *Id.*

Plaintiff argues that these answers were adequate because Ms. Cook is the only non-employee of defendants who has made a statement supporting her claim. Plaintiff also argues that because all of her discrimination claims are grounded in RCW 49.60, she determined that incorporation of her answer to Interrogatory No. 1 was the most efficient manner of response. Plaintiff further argues that statements made by defendants' employees are more easily obtainable from defendants own records, as already revealed to defendants in response to their first set of interrogatories. *See* Fed.R.Civ.P. 33(c).

■ Plaintiff's counsel apparently misunderstands both his discovery obligations and Rule 33(c). Each of plaintiff's claims under RCW 49.60 involves a different kind of discrimination and will require different evidence to prove and to defend. Accordingly, defendants sought to discover statements made by individuals that plaintiff claims supported each of her claims of discrimination. Unless Ms. Cook is the only individual who has information about all of Ms. Calhoun's discrimination claims, it was inappropriate for plaintiff to give a single response to all of defendants' interrogatories.

■ In addition, Rule 33(c) applies only where the answers to interrogatories may be found in the business records of the party upon whom the interrogatories have been served. Plaintiff however, claims that the answers may be found in

---

**5.** Defendants also initially moved for sanctions based on defendants' failure to provide by December 6, 1991, the $500 in costs awarded by this court in its November 26, 1991, order.

However, as defendants' local counsel had received the $500 check by December 6, defendants withdrew this part of their motion for sanctions.

defendants own documents—the documents of the serving party, not the documents upon whom the interrogatories have been served. Furthermore, Rule 33(c) mandates that plaintiff do more than merely make a broad statement that the information is available from documents. *See Budget Rent–A–Car of Missouri, Inc. v. Hertz Corp.*, 55 F.R.D. 354, 357 (D.Mo. 1972). Rather, under Rule 33(c), a party must specify the records from which the answers can be ascertained in sufficient detail to permit the interrogating party to locate and identify the records. *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inc. Corp.*, 711 F.2d 902 (9th Cir.1983). Plaintiff states only that "as to the employees (who have made statements in support of plaintiff's claims), the answers to all five Interrogatories may be derived from the business records already revealed to Defendants in response to their first set of Interrogatories." Response to Defendants' Motion for Sanctions at 3. This response falls far short of what is required under Rule 33(c).

The court concurs with defendants that plaintiff's discovery responses were inadequate. However, as the court has granted defendants' motion for summary judgment, the court will not impose any additional sanctions against plaintiff.

### 3. Costs of Plaintiff's Questioning of Dr. Spaulding

■ Defendants seek to have plaintiff pay the costs of plaintiff's counsel's questioning of Dr. Richard Spaulding, plaintiff's treating physician, for one hour and twenty-five minutes at the conclusion of defendants' deposition of Dr. Spaulding.

Pursuant to this court's November 26, 1991, order extending the discovery deadline for limited purposes, defendants scheduled the deposition of Dr. Richard Spaulding for December 11, 1991, and upon contacting Dr. Spaulding's office, learned that Dr. Spaulding required advance payment of the hourly fee he charges for preparing for and for attending depositions. Defendants submitted a check to Dr. Spaulding prior to his deposition.

When defendants' counsel was finished questioning Dr. Spaulding, plaintiff's counsel asked questions for an hour and twenty-five minutes. At the conclusion of plaintiff's counsel's questions, Dr. Spaulding asked who would pay for the additional time. Defendants' counsel responded that because he did not ask any questions during this time, he believed it was plaintiff's responsibility to pay. Dr. Spaulding stated that he would submit his bill to defendants because they arranged the deposition.

Plaintiff claims that she should not have to pay for the time her counsel deposed Dr. Spaulding because defendants agreed to pay an exorbitant fee without checking with plaintiff first. Defendants agree that Dr. Spaulding's fees were unreasonably high but state that they simply agreed to a figure set out by Dr. Spaulding to be his normal hourly fee for preparing for and for attending a deposition.[6]

Dr. Spaulding and defense counsel had been discussing Dr. Spaulding's hourly fee immediately before plaintiff's counsel began to question Dr. Spaulding. Thus, plaintiff's counsel was well aware of the fees charged for the deposition and need not have proceeded to conduct his own deposition at that time. The court determines that plaintiff's counsel is responsible for the additional time spent deposing Dr. Spaulding and must pay Dr. Spaulding's fee for that time.[7]

---

**6.** Dr. Spaulding charges $350 an hour for preparing for a deposition and $450 an hour for attending a deposition. Defendants represent that when they contacted Dr. Spaulding's office they were told that these fees were not negotiable and were within the parameters of the billing agreement between the Pierce County medical and bar associations. *See* Defendants' Reply in Support of Motion for Sanctions at 13.

**7.** It is clear that plaintiff's counsel alone, not plaintiff, was responsible for the decision to question Dr. Spaulding at the deposition. Therefore, plaintiff's counsel alone, not plaintiff, is to bear the costs of that questioning.

### D. *Plaintiff's Motion for Reconsideration of Order Awarding Costs*

██ Plaintiff moves for reconsideration of that portion of this court's November 26, 1991, order directing plaintiff to pay $500 for the cost of defendants' second motion to compel. Plaintiff argues that reconsideration is appropriate for three reasons: (1) defendants did not comply with Local Rule CR 37(g), requiring conference of counsel prior to filing a motion to compel; (2) defendants did not file a Local Rule CR 37(h) certificate of compliance; and (3) it was defendants' conduct, not plaintiff's, that necessitated the motion to compel. Plaintiff argues that had defendants conducted discovery properly by arranging a conference of counsel prior to filing their motion to compel, plaintiff would have had ample opportunity to respond to all discovery requests in a timely fashion. Plaintiff further argues that defendants' "vexatious pleadings," including their motion for summary judgment, also prohibited her from responding to discovery requests in a timely fashion.

These arguments are wholly without merit and severely distort plaintiff's counsel's complete disregard of his client's discovery obligations in this case. As the record clearly reflects, plaintiff's counsel has been unresponsive to both defendants and to this court on discovery issues. Plaintiff's counsel did not respond to defendants' first discovery requests or to defendants' two motions to compel. It is insufficient for plaintiff's counsel to protest at this stage that costs awarded should now be rescinded when plaintiff's counsel couldn't be bothered to file any sort of response at the time the second motion to compel was filed.

In addition, in the documents filed with the court, defendants did represent that they had conferred with opposing counsel prior to filing their motion to compel as required by Local Rules CR 37(g) and CR 37(h). *See* Defendants' Motion to Compel, November 22, 1991, at 2 n. 1. In light of plaintiff's counsel's past record regarding discovery, plaintiff's counsel's representations that there was no discovery confer-ence or that the discovery conference was insufficient simply are not credible. Accordingly, plaintiff's motion for reconsideration will be denied. However, the court will amend its prior order to impose the $500 in costs on plaintiff's counsel, not plaintiff. In the event the $500 check forwarded to defendants on December 6, 1991, was supplied by plaintiff rather than plaintiff's counsel, plaintiff's counsel is ordered to reimburse his client.

### III. CONCLUSION

It is hereby ORDERED, ADJUDGED and DECREED that:

(1) plaintiff's motions to strike defendants' motion for summary judgment, for sanctions and for reconsideration of that part of this court's November 26, 1991, order awarding costs are DENIED;

(2) defendants' motion for sanctions is DENIED;

(3) plaintiff's counsel is to bear the cost of the hour and twenty-five minutes he spent questioning Dr. Richard Spaulding at defendants' deposition of Dr. Spaulding;

(4) this court's November 26, 1991, order awarding defendants' $500 in costs is amended to state that plaintiff's counsel, not plaintiff, is to bear the $500 in costs;

(5) defendants' motion for summary judgment of dismissal of all claims is GRANTED; and

(6) the January 7, 1992, pretrial conference and January 13, 1992, trial date are VACATED.