Filed 12/19/13  Sellner v. Chase Home Finance CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ALLEN SELLNER AND MARGARET SELLNER,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CHASE HOME FINANCE INC., et al,<br><br>    Defendants and Respondents. | 2d Civil No. B238085<br>(Super. Ct. No. 56-2010-0037348-CU-DR-VTA)<br>(Ventura County) |

Allan and Margaret Sellner appeal from a summary judgment entered in favor of Chase Home Finance LLC and JPMorgan Chase Bank, N.A, respondents.[1]  Appellants sued respondents for defamation, contending that respondents had falsely reported to credit bureaus that appellants were delinquent on their mortgage loan.  We affirm.

*Factual and Procedural Background*

In 2004 Washington Mutual Bank loaned appellants $325,000.  The loan was secured by a deed of trust encumbering appellants' residence.  The loan was serviced by

---

[1] Appellants' complaint erroneously named the defendants as Chase Home Finance, Inc., Chase Home Finance LLC, and JPMorgan Chase Bank.  The correct designations for the defendants are Chase Home Finance LLC and JPMorgan Chase Bank, N.A.

respondent Chase Home Finance LLC (Chase).  Respondent JPMorgan Chase Bank, N.A, is the successor in interest to Washington Mutual Bank and Chase.

On April 1, 2009, the monthly payment on the loan increased from $1,286.46 to $1,582.74.  The payment was due on the first day of each month.  Appellants paid $1,582.74 in April and the same amount on May 5, 2009.

When the monthly payment increased, appellants applied for a loan modification. "On April 29, 2009, Chase determined that [appellants] did not qualify for loan modification due to excessive obligations (i.e. debt)."  In a letter dated May 7, 2009, Chase notified appellants that they had "been approved for a Special Forbearance Agreement [SFA], which provides temporary relief from your loan payments."  The letter included the following warning in capital letters:  "WE HAVE TOLD A CREDIT BUREAU ABOUT A LATE PAYMENT, MISSED PAYMENT OR OTHER DEFAULT ON YOUR ACCOUNT.  THIS INFORMATION MAY BE REFLECTED IN YOUR CREDIT REPORT."  The SFA was attached to the letter.

The SFA provided that, for the month of May 2009, appellants "must send $800 to reduce [their] total delinquency."  But appellants had paid $1,582.74 on May 5, 2009, before they received the SFA.  The SFA further provided that appellants must pay $800 on the first day of each month from June 2009 through September 2009.  The SFA continued: "If all payments are made as scheduled, we [Chase] will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current.  [¶]  All of the original terms of your loan remain in full force and effect, unless specifically mentioned within this agreement."

Appellants signed the SFA. They made payments of $800 on June 2, July 1, July 31, September 4, October 6, and November 3, 2009.

On November 27, 2009, Chase sent appellants a document entitled "Repayment Agreement."  The agreement required appellants to pay $1,843.65 on the first day of each month from December 2009 through May 2011.  After May 2011, appellants would "resume payment of regular monthly installments."  The Repayment Agreement included

the same warning as the SFA that Chase had informed a credit bureau of appellants' default or late payment.

Appellants signed the Repayment Agreement. They made the monthly payments as scheduled, except that some of the payments were a few days late.

In February 2011 appellants filed a second amended complaint alleging three causes of action: defamation, defamation per se, and fraud by concealment of facts. The complaint asserted that, although appellants had complied with the SFA, respondents had reported false and "derogatory" information about them to three credit bureaus: Equifax, Transunion, and Experian. The information was that appellants' account was past due. Because of respondents' action, appellants' "credit rating [was] seriously damaged." Appellants sought damages and an "injunction enjoining [respondents] to remove the derogatory information . . . from appellants' credit history."

On the fraud cause of action, the trial court granted respondents' motion for judgment on the pleadings. Respondents moved for summary judgment on the remaining two causes of action for defamation. The grounds for the motion were (1) respondents' statements to the credit bureaus were true; and (2) even if false, the statements were privileged under Civil Code section 47, subdivision (c).

In explaining its reasons for granting the motion for summary judgment, the trial court declared: "Chase has established that the forbearance documents said nothing more than [that] $800.00 would be accepted for a 4 month period [citation]. There was no representation that this absolved any existing delinquency or future delinquencies. There was no representation that reports would not be made to the credit bureaus [citation]. . . . [T]he forbearance agreement did not cure defaults. As a result, when Chase made its reports to the credit agencies, it was reporting the truth, i.e. that there were shortages in the payments as required by the original loan agreement. [¶] Chase has established all of its undisputed material facts. They [are] entitled to judgment." The trial court mentioned nothing about respondents' defense that their communications to the credit bureaus were privileged.

3

*Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850; see also Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal we conduct a de novo review, applying the same standard as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) Our obligation is " ' "to determine whether issues of fact exist, not to decide the merits of the issues themselves." ' " (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228.) We must " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.)

*Discussion*

Appellants contend that "the trial court erroneously interpreted the [SFA] to mean that the acceptance of reduced payments during the forebearance period was not a promise to refrain from derogatory credit reporting." But appellants did not allege a cause of action for breach of contract. They sued for defamation. "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' [Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) " ' "In all cases of alleged defamation, . . . the truth of the offensive statements or communication is a complete

4

defense against civil liability, regardless of bad faith or malicious purpose." ' [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 28.)

The question here is whether a triable issue of fact exists concerning the truth of respondents' statements to the credit bureaus that appellants' account was past due. We agree with the trial court that there is no triable issue of fact and that respondents are entitled to judgment as a matter of law. After June 1, 2009, appellants' account was past due. The parties did not agree that, by paying $800 instead of $1,582.74 per month starting June 1, 2009, appellants would be current on their account. The SFA states, "[Y]ou must send $800 to reduce your total delinquency." The clear implication of this statement is that the $800 monthly payments would not prevent the loan from being past due. "Delinquent" means "past due and unpaid." (Webster's Third New Internat. Dict. (1981) p. 597, col. 2.) The SFA precludes "collection and/or foreclosure acitivity" on appellants' delinquent account. The SFA states that such activity "will resume" if the $800 monthly payment schedule is not followed.

Moreover, Chase's letter accompanying the SFA asserted, "This plan is based on your reason for *default* of excessive obligations." (Italics added.) Appellants would not be in default if the $800 monthly payments were going to keep them current. In addition, Chase's letter warned: "WE HAVE TOLD A CREDIT BUREAU ABOUT A LATE PAYMENT, MISSED PAYMENT OR OTHER DEFAULT ON YOUR ACCOUNT." This warning was unnecessary if appellants' adherence to the SFA's payment schedule would prevent them from becoming delinquent.

Finally, appellants admitted that they were in default. The Repayment Agreement signed by appellants on December 2, 2009, provided: "DEFAULT: You acknowledge that the loan is in default for failure to pay the monthly payments as agreed. The acceptance of payments under this Repayment Agreement does not cure the present loan default." In his declaration under penalty of perjury in opposition to the motion for summary judgment, Allan Sellner declared: "*We acknowledge that our loan was in default.* We acknowledge that [respondents] reported our loan was in default. We do not acknowledge or agree that they had *the right* to do this as we made all of our mortgage

5

payments in a timely manner and in compliance with the SFA."  (Italics added.)  This statement does not detract from the fact that the report was true.  Appellants' "admission of truth bars [their] defamation cause of action."  (*Hejmadi v. Amfac, Inc.* (1988) 202 Cal.App.3d 525, 553.)

In any event, as the trial court noted, "[t]here was no representation that reports would not be made to the credit bureaus."  Indeed, the warning in the letter accompanying the SFA made clear that the credit bureaus would be informed of appellants' past due account.

*Disposition*

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

6

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Jeffrey L. Hoffer, for Appellants.

S. Christopher Yoo, Lashon Harris and Alvaradosmith, for Respondents.